2002 ME 123

**WRIGHT & MILLS**

v.

**Harrison BISPHAM.**

Supreme Judicial Court of Maine.

Submitted on Briefs: May 30, 2002.
Decided: July 31, 2002.

Paul Sumberg, Skowhegan, for the plaintiff.

Harrison Bispham, defendant pro se, Sidney.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and LEVY JJ.

DANA, J.

[¶ 1] Harrison Bispham appeals from a judgment entered in the District Court (Waterville, *Nivison, J.*) requiring him to borrow $5,000 to be repaid with interest at 14% per annum to discharge a judgment debt. Bispham contends the court erred in denying him a continuance, creating an unnecessary financial hardship, and failing to provide a detailed response to his motion for clarification. Because the court exceeded its authority by ordering Bispham to borrow money to pay his debt to the plaintiff, we vacate the judgment.

## I. BACKGROUND

[¶ 2] As part of a 1993 divorce judgment Bispham was ordered to pay his ex-wife's attorneys, Wright & Mills, $9,000. Bisp-

ham asserts in his brief[1] that in 1999 he paid $1,000 to Wright & Mills and $1,000 to Walter Ollen (the guardian-ad-litem to whom he is also indebted). In January 2001 Wright & Mills placed a lien on Bispham's house.

[¶ 3] Bispham was subpoenaed to appear at a disclosure hearing in August 2001. Shortly before the hearing Bispham sent a settlement proposal to Wright & Mills, offering to settle for a lump sum payment of $5,000. Bispham then moved for a continuance because the plaintiff's attorney was on vacation and could not consider his settlement offer; the court acceded and rescheduled the hearing for September 12.

[¶ 4] On the day of the hearing Bispham filed a second motion to continue, which the court denied. Before proceeding, the court let Bispham, appearing *pro se,* argue that his responsibilities at home and the national events of September 11 made him too anxious to ably prepare for the hearing. The court informed the parties that should Bispham "feel the need to review any documents that, for some reason, he didn't have sufficient time to review, and, therefore, prepare for the hearing, we will afford him that opportunity this afternoon."

[¶ 5] Bispham disclosed, *inter alia,* the following financial information. As an engineer for the Maine Department of Environmental Protection he earns $44,966.40 per year. His children are ages twelve and thirteen. Bispham owns a house subject to a mortgage of $65,000 and owes $30,000 on a home equity loan; he estimated the house is worth between $90,000 and $110,000. Bispham stated that the bank had been willing to loan him another $9,000, but that Wright & Mills's lien on

the property prevents him from refinancing. Bispham has a 1992 Taurus station wagon worth $1,000 and a 1989 Suzuki Samarai worth $500, both owned without encumbrances. He owns two boats: a thirteen foot 1966 Boston Whaler valued between $500 and $1,000 and a thirty-two foot wooden Pilot schooner worth "nothing." He also has a Key Bank account with a "cash reserve" and available credit of $1,000.

[¶ 6] Wright & Mills inquired whether he had "the ability to borrow money," and Bispham replied: "I have recently spoken with my credit union and the last loan that I can get from them is a five thousand dollar—it's Maine State Employees Credit Union loan for five thousand dollars, I think at fourteen percent interest." When asked if his girlfriend could make him a loan, Bispham replied: "She would loan me money with certain conditions."

[¶ 7] In terms of Bispham's monthly expenses, the first mortgage requires monthly payments of $648.05 and the home equity loan $240; the oil heat and electricity are each $50. Bispham has a cell phone costing $45 "to get in touch with his children ... work [and] safety," a computer, an account with America Online at $25, and $39 dues for a health club membership.

[¶ 8] Car insurance is $275 every six months; credit card debt is $5,300; and he owes $1,000 in back rent for the stands under his schooner. Other debts include $300 for his parents' fiftieth anniversary present, an anticipated $500 bill for plumbing, $8,000 to Wright & Mills, and $8,000[2] to Walter Ollen (the GAL).

---

1. Wright & Mills did not file a brief with this Court.

2. Bispham stated at the hearing that he owes Ollen $8,000, but in the post-hearing motion he stated that he owes Ollen "$7,000 [plus] continuing 15% interest."

[¶ 9] At the conclusion of Bispham's testimony, Wright & Mills asked the court to order Bispham to pay $5,000 within sixty days "to be borrowed from his credit union on the—whatever he has to do." Bispham stated that he could not pay $500 a month, so the court inquired: "Do you think you can ... borrow the five thousand and pay that?" Bispham replied that he could borrow from his credit union, but that it would create some hardship because "it's a short payback loan." The court continued:

> If there's money that's available to pay a debt, then it should be paid. And, here, it is ... clear that you have the ability to borrow. And I understand the terms may not be all beneficial, but the fact that you can borrow from a lending institution suggests to me that, certainly, you have the ability, because, otherwise, the money wouldn't be loaned to you.

The court ordered Bispham to pay $5,000 in sixty days, "to be secured through a loan from the credit union," and to forward his income tax refund to Wright & Mills, and "as an understanding that your monthly obligation is going to increase because of the five thousand dollar loan ... which is going to reduce your monthly ability to pay[,] I'm going to order that you pay, in addition to that, a hundred and fifty dollars a month" thereafter until the debt is satisfied. The court forewarned Bispham that if he did not comply with the order he could be held in contempt of court.

[¶ 10] A week later Bispham filed a motion for "Clarifications, To Alter or Amend, For Relief From Order, For New Trial" asking the court to articulate its assessment of his emotional stability in denying the continuance and proceeding with the hearing, to grant relief from the order, and to permit a "new trial." He also asserted that "[m]y bank has informed me that I

am crazy to think I can borrow $5,000 when I am considering bankruptcy."

[¶ 11] The next day Bispham filed another motion for clarification, stating that he has a number of outstanding bills and some necessary, large expenses on the horizon, like "automobile transportation ... Christmas travel and gift giving, charitable contributions and children/family vacation." Additionally, he still owes Ollen $7,000 at 15% interest and the court's order "seems to make it impossible" to pay him. The court denied the motions because Bispham offered no newly discovered evidence, "nor any other basis for amending the order or granting a new trial." Bispham filed this appeal.

## II. DISCUSSION

### 1. The Motion to Continue

■ [¶ 12] Bispham contends that the court should have granted him a continuance because of his emotional distress due to September 11 and the stress the legal system has caused over the last ten years.

■ [¶ 13] We review a court's decision to deny a request for a continuance for an abuse of discretion. *Provenzano v. Deloge*, 2000 ME 149, ¶ 11, 755 A.2d 549, 551. "A party seeking a continuance has the burden of showing sufficient grounds for granting the motion," *id.* (quoting *Champagne v. Mid–Maine Med. Ctr.*, 1998 ME 87, ¶ 19, 711 A.2d 842, 848), and must "make known to the presiding justice *substantial reasons* why granting the continuance would serve to further justice," *Provenzano*, 2000 ME 149, ¶ 11, 755 A.2d at 551 (quoting *Farrell v. Theriault*, 464 A.2d 188, 192 (Me.1983)). We examine whether the denial of the motion for a continuance had any "adverse prejudicial effect on the substantial rights" of the movant. *Magno v. Town of Freeport*, 486 A.2d 137, 140 (Me.1985). "Each case must depend large-

ly upon its own facts and circumstances." *Id.* Rule 40(b) of the Maine Rules of Civil Procedure provides:

> A motion for continuance of an action shall be made not less than 4 days before the date set for commencement of trial in the action;[3] but if the cause or ground of the motion is not then known, the motion may be made as soon as practicable after the cause or ground becomes known....

M.R. Civ. P. 40(b). Also, 14 M.R.S.A. § 3125(3) (Supp.2001), provides: "A continuance of the disclosure hearing may be granted for good cause."[4]

[¶ 14] Here, the court did not exceed the bounds of its discretion in denying Bispham's second motion for a continuance. The court recognized and accommodated Bispham's anxiety by stating that he could have time, should he need it, to review documents. Had there been evidence of Bispham's inability to proceed, the court may have erred in going forward; however, the transcript reveals that Bispham competently represented himself and his

testimony was lucid. The court, having viewed Bispham's demeanor firsthand, did not express any concern about Bispham's mental state. Additionally, Bispham already had the benefit of one continuance that yielded extra time to prepare for the hearing. Thus, the court did not exceed the bounds of its discretion in denying the motion.

## 2. The Remedy

[¶ 15] Although a court may, in an appropriate case, order a debtor to pay a creditor even if the debtor does not have the cash if the debtor has sufficient assets that can be sold, *see, e.g., Steelstone Indus., Inc., v. McCrum,* 2001 ME 171, ¶ 1, 785 A.2d 1256, 1257,[5] the court may not order a debtor to borrow to pay a judgment. A court certainly can consider the availability of credit in a disclosure proceeding, but it should not order a debtor to create one creditor to satisfy another.

[¶ 16] We have recognized that in disclosure proceedings "courts derive their adjudicative power largely from statutes."

---

**3.** When a party had notice of the trial date and did not timely initiate a request for a continuance pursuant to civil procedure rule 40(b), we have affirmed a court's denial of a request for a continuance. *See, e.g., Schneider v. Putnam,* 1998 ME 26, ¶ 5, 705 A.2d 1117, 1118 (holding the denial was proper when the party had notice of the trial date and did not take "timely action" to seek a further continuance).

**4.** While it is possible to show "good cause" justifying a last minute continuance, *see* M.R. Civ. P. 40(b), litigants are not invariably successful in such an endeavor. In *Cloutier v. Whitten,* 544 A.2d 737, 738, (Me.1988) the *pro se* defendant made a motion on the day of trial and argued he had trouble getting an airline ticket to Maine from Florida on short notice. We decided that "any difficulty defendant encountered in paying for an airline ticket for a flight to Maine ... did not rise to the level of sufficient cause for postponing the trial date at that late time." *Id. See also*

*Schulz v. Schulz,* 521 A.2d 282, 283 (Me.1987) (recognizing the denial was proper because the case had already been continued four times, the plaintiff was forewarned two months prior to the trial date that the court would not grant another continuance absent an *"extreme emergency,"* and the plaintiff failed to exercise due diligence in securing representation); *Magno,* 486 A.2d at 140 (recognizing the denial of a continuance did not prejudice the plaintiff when "stand-in counsel" arrived at the hearing arguing for a continuance, which was denied, and then proceeded to competently handle the summary judgment motion).

**5.** We held that the defendant's individual retirement account was not exempt from collections of a money judgment because he "had not established that it was reasonably necessary for the support of himself and his dependents." *Steelstone,* 2001 ME 171, ¶ 1, 785 A.2d at 1257.

*Spottiswoode v. Levine*, 2001 ME 54, ¶ 5, 769 A.2d 849, 851. The statutory scheme [6] that delineates the powers a court has available to enforce a judgment does not authorize a court to order a judgment debtor to borrow to discharge the judgment debt.

 [¶ 17] While the court appropriately ordered monthly payments, it is not clear that the court took Bispham's debt to Ollen into account. Whereas section 3126–A(4)(B) provides that the court "may" take into consideration "[a]ny payments the judgment debtor is required to make to satisfy other judgment orders or wage assignments," on remand the court should reassess Bispham's payment plan in light of all his outstanding debts.

 [¶ 18] Bispham contends that the court should have provided "detailed responses" to his motion [7] for clarification. A trial court has the inherent authority to

6. One way a judgment creditor can enforce a money judgment is to proceed with a disclosure hearing. 14 M.R.S.A. § 3120 (Supp. 2001). Section 3125, in pertinent part, provides:

> **Appearance and examination of the debtor**
> **1. Disclosure hearing.** Unless there is an agreement which meets the requirements of subsection 2, the judgment debtor shall appear at the time and place indicated in the subpoena for a hearing to determine his ability to pay the judgment. The debtor shall be placed under oath and shall disclose his income, assets and any other information which will aid the judgment creditor in enforcing the judgment. . . .
> **6. Termination.** If the court is satisfied that the debtor has no earnings, property or other assets from which he can satisfy the judgment, in whole or in part, the disclosure shall be terminated. . . . A terminated hearing shall be considered a completed hearing for the purposes of section 3124.

*Id.* § 3125(1) & (6) (Supp.2001). Section 3124 provides: "A judgment creditor may subpoena the judgment debtor to disclose no more than once every 6 months, except upon motion for good cause shown." *Id.* § 3124 (1980). Section 3126–A provides:

> In the case of a judgment debtor who is an individual, the maximum amount of earnings for any workweek that is subject to an installment order may not exceed the least of;
> **A.** Twenty-five percent of the sum of the judgment debtor's disposable earnings and exempt income for that week;
> **B.** The amount by which the sum of disposable earnings and exempt income for that week exceeds 40 times the minimum hourly wage prescribed by 29 United States Code, Section 206(a)(1); or
> **C.** The total amount of disposable earnings.

*Id.* § 3126–A(3) (Supp.2001). Factors to consider in determining amount of installment payment order are as follows:

> **A.** The reasonable requirements of the judgment debtor and the judgment debtor's dependents;
> **B.** Any payments the judgment debtor is required to make to satisfy other judgment orders or wage assignments;
> **C.** Other judgment orders or wage assignments that have priority;
> **D.** The amount due on the judgment;
> **E.** The amount of money or earnings being or to be received; and
> **F.** Any other factors the court considers material and relevant.

*Id.* § 3126–A(4).

7. Bispham did not refer to Rule 60(b) of the Maine Rules of Civil Procedure as the basis of his post-hearing motion, yet the language of the motion mimics the rule. Bispham argues that he should be relieved from the order because of "[a]parrent [sic] [c]ourt mistake and/or [n]ew [i]nformation." Rule 60(b) provides:

> On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . .; (4) the judgment is void; (5) the judgment has been satisfied . . .; or (6) any other reason justifying relief from the operation of the judgment. . . .

M.R. Civ. P. 60(b). Though the denial of a 60(b) motion is reviewed for an abuse of discretion, *KeyBank Nat'l Ass'n v. Sargent*, 2000 ME 153, ¶ 13, 758 A.2d 528, 533, we

clarify its judgment. *Weiss v. Brown*, 1997 ME 57, ¶ 5, 691 A.2d 1208, 1210. The court is "always empowered to 'make clear the meaning of a prior decree when necessary to guide the conduct of the parties,'" particularly when the judgment is ambiguous. *MacDonald v. MacDonald*, 582 A.2d 976, 977 (Me.1990) (quoting *Randlett v. Randlett*, 401 A.2d 1008, 1010 (Me.1979)). Here, the court's order clearly stated what Bispham needed to do, thus, the order did not require clarification.

need not reach this issue because we vacate the underlying order.

In terms of Bispham's request for a "new trial," it is evident from the transcript that he

The entry is:

Judgment vacated and remanded for further proceedings consistent with this opinion.

had a comprehensive and fair hearing for the limited purpose of disclosing his assets.