2009 ME 59

**In re TREVER I.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 30, 2009.
Decided: June 11, 2009.

Shari R. Sobel, Esq., Bergen & Parkinson, LLC, Kennebunk, for the father.

Janet T. Mills, Atty. Gen., Nora Sosnoff, Asst. Atty. Gen., Augusta, for Maine Department of Health and Human Services.

Kristina Donovan, Esq., Auburn, Guardian ad litem.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, and MEAD, JJ.

ALEXANDER, J.

[¶ 1] The father of Trever I. appeals from a judgment of the District Court (Lewiston, *Beliveau, J.*) terminating his parental rights. The father argues that the court (1) erred when it terminated his parental rights following the Department of Health and Human Services's (Department) alleged failure to sufficiently investigate the father's claim of Indian heritage and the applicability of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C.S. §§ 1901–1963 (2004), and (2) abused its discretion when it denied his motion to continue the termination hearing. We affirm the judgment.

## I. CASE HISTORY

[¶ 2] The Department filed a petition for a child protection order on March 24, 2005, asserting that the father was physically absent and made no effort to build a relationship with Trever.[1] The petition stated that it was unknown at that time whether the child had a family member who is or may be a member of an Indian tribe. The court granted the Department's subsequent request for temporary custody, pending a hearing on the petition, due to the parents' inability or unwillingness to provide a safe, stable home for the child. During these preliminary proceedings, the father, represented by counsel, raised no issue of any relationship to an Indian tribe.

---

1. The Department also filed a petition with respect to the mother, the custodial parent. The mother has consented to the termination of her parental rights and is not a party to this appeal.

[¶ 3] On July 1, 2005, the court held a jeopardy hearing at which the father appeared with counsel. The court issued an uncontested jeopardy order granting full custody of Trever to the Department. In the jeopardy proceeding, the father conceded that the ICWA did not apply. According to the jeopardy order, the father was asked at the jeopardy hearing if he is a member of a federally-recognized Indian tribe. The father did not indicate that he was, the court determined that the ICWA did not apply, and the father expressly agreed to the findings and disposition in the jeopardy order.

[¶ 4] The record indicates that in 2006, the father informed a Department caseworker that he had "Indian heritage" and that he would follow-up with additional, more specific information. However, he never mentioned Indian heritage to the Department again. The Department worker stated that, other than meeting with the Department twice in 2006, the father largely failed to stay in contact with the Department and did not provide reliable contact information to the Department. The father appeared for only two scheduled court dates, the July 2005 jeopardy hearing and a case management conference held a year later. He failed to appear for the eight other court dates prior to the termination hearing.

[¶ 5] The Department filed a petition for termination of parental rights on June 23, 2006, which it supplemented on July 14, 2008. The record reflects that in the three years between the jeopardy hearing and the termination hearing, the father was elusive and made little effort to have any contact with his child. The Department's caseworker testified at the termination hearing that she told the father about the termination petition during a call, advising him that the Department needed to serve him with the termination petition, and that there would be an upcoming termination hearing. The caseworker attempted to get the father's address so that he could be served for the termination hearing. Though he stated that he did not want his parental rights terminated and that he intended to be at the hearing, the father refused to provide a contact number or address except to say that he was in a hospital in Massachusetts.

[¶ 6] On July 24, 2008, the Department sent a letter to the Bureau of Indian Affairs, U.S. Department of the Interior (Bureau), giving the father's name and birthdate as well as Trever's paternal grandmother's name and presumed decade of birth, and seeking any information the Bureau had to support the father's claim that he is of Indian descent. Based on the limited information provided, the Bureau responded in a letter dated August 11, 2008, that it was unable to confirm the father's Indian ancestry. The Bureau stated that a person claiming an Indian bloodline needs to provide the names, birthdates, place of birth, and tribal affiliation of relatives believed to be Indian in order for the Bureau to conduct a search.

[¶ 7] On August 12, 2008, the Department filed a motion for service by publication with respect to the father, asserting that, despite specified diligent search efforts, it could not locate him. Because the father's whereabouts were unknown, the court ordered that notice of the termination hearing be served on the father by publication. M.R. Civ. P. 4(g).

[¶ 8] A contested termination hearing was held on September 24, 2008. The father did not appear, although his attorney was present. The father's attorney informed the court that he had spoken to the father by phone just before the hearing began and that the father requested a continuance for two reasons: (1) the father claimed to be hospitalized out of state in a

veteran's hospital and was not allowed to be released to attend the hearing, and (2) the father was "close to getting information related to" the ICWA, has a "Cherokee background," and wanted additional time to try to determine whether the ICWA applied to him.

[¶ 9] The State objected to the father's motion to continue, asserting that: (1) Department staff had seen him around Lewiston in recent weeks; (2) the Department had no information that he was then hospitalized out-of-state; (3) he had not made a proper motion documenting his inability to attend the hearing; and (4) he was duly served by publication and had a pattern of missing court dates. The State also argued that the father had agreed at the jeopardy hearing that the ICWA did not apply to him and that he had three years between the jeopardy hearing and the termination hearing to provide information to the Department concerning his alleged Indian heritage.

[¶ 10] The court denied the father's motion to continue. It then proceeded with the hearing. During the hearing, the court heard testimony from two witnesses for the State, admitted the two letters exchanged between the Department and the Bureau and proof of service on the father by publication, and admitted the most recent guardian ad litem report. The Department caseworker testified that she had no recollection of the father mentioning that he had a "Cherokee background" when he told her in 2006 that he had "Indian heritage." She further testified that Trever had been in foster care for forty-one months and that the hope is that his current foster family will adopt him. At the conclusion of the hearing, the court indicated on the record that it would order termination of the father's parental rights.

[¶ 11] On October 7, 2008, the court entered a written judgment terminating the father's parental rights. The court explained its reasoning for denying the father's request for a continuance, stating that the father had: (1) attended only two court appearances, and failed to appear at eight other identified court dates; (2) been on notice of the case since his appearance at the jeopardy hearing on July 1, 2005; and (3) taken no steps to seek a continuance until his attorney contacted him moments before the hearing started. The court also concluded that the ICWA did not apply, based on the father's agreement at the 2005 jeopardy proceeding that the ICWA was inapplicable, his minimal suggestions to the Department since then of his Indian heritage, and the Bureau's inability to identify any tribal affiliation. The court found that the father's parental unfitness was proven by clear and convincing evidence based on all four prongs of 22 M.R.S. § 4055(1)(B)(2)(b) (2008) and that termination of his parental rights was in the child's best interest. The father then brought this appeal.

## II. LEGAL ANALYSIS

### A. Burden to Determine the Applicability of the ICWA

[¶ 12] The father argues that once he informed the Department caseworker in 2006 of his belief that he had Indian ancestry, the Department had the duty to seek additional information about his ancestry to determine whether the ICWA applied, and that its one letter to the Bureau failed to satisfy that duty. The father further argues that the court (1) erred in conducting the termination hearing, instead of continuing the proceeding, and (2) deprived him of his fundamental liberty interest when it terminated his parental rights without first determining, based on evidence, that the ICWA did not apply. Essentially the father argues that once any parent in a child protective pro-

ceeding alleges that the parent has Indian heritage, the Department assumes the burden to seek and obtain evidence and present it to the court to disprove the allegation of Indian heritage before the case can proceed.

[¶ 13] Generally, in a civil case, the party to a proceeding who has better access to information and is seeking the benefit of a protection or exception to a law has the burden of proof on that point. *See generally Meacham v. Knolls Atomic Power Lab.*, —— U.S. ——, ——, 128 S.Ct. 2395, 2400, 171 L.Ed.2d 283 (2008); *United States v. New York, New Haven & Hartford RR. Co.*, 355 U.S. 253, 256 n. 5, 78 S.Ct. 212, 2 L.Ed.2d 247 (1957) ("The ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly in the knowledge of his adversary."); *Dowley v. Morency*, 1999 ME 137, ¶ 11, 737 A.2d 1061, 1066. To determine which party bears the burden of investigating the Indian heritage of a child and proving or disproving the applicability of the ICWA in a termination of parental rights case, we review the ICWA, Maine's Child and Family Services and Child Protection Act, 22 M.R.S. §§ 4001 to 4099–C (2008), and relevant precedent interpreting those laws.

[¶ 14] Other than providing that a petition for child protection must include the names of relatives who are members of an Indian tribe, 22 M.R.S. § 4032(2)(K), State law does not indicate the extent of the Department's burden to investigate beyond making inquiries of the family.[2] We turn, then, to the ICWA.

[¶ 15] The purpose of the ICWA is:

[T]o protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture....

25 U.S.C.S. § 1902; *see also In re Denice F.*, 658 A.2d 1070, 1072 (Me.1995) (citing *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 39, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989)). As a threshold matter, a child involved in a termination of parental rights proceeding must be an "Indian child" before the ICWA applies. *See K.D. v. M.L.*, 751 N.W.2d 236, 242 (N.D. 2008) (stating that the court makes "the legal determination whether the child is an Indian child under § 25 U.S.C. § 1903(4), thereby triggering application of ICWA"); *see also In re J.L.M.*, 234 Neb. 381, 451 N.W.2d 377, 387 (1990).

[¶ 16] An "Indian child," for purposes of the ICWA, means "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian Tribe and is the biological child of a member of an Indian tribe." 25 U.S.C.S. § 1903(4). An "Indian tribe" means "any Indian tribe, band, nation, or other organized group or community of Indians recognized as eligible for the services provided to Indians by the Secretary [of the

---

**2.** The father refers to a number of provisions allegedly in the Department's Child and Family Services Policy Manual that support his argument that it is the Department's duty, rather than the parent's duty, to investigate a child's potential Indian heritage in order to determine the applicability of the ICWA. However, no portion of the manual is in the trial court record, nor was any portion included in the Appendix. We do not consider new facts, exhibits, or other materials relating to the merits of an appeal that were not presented to the trial court and included in the record. *Beane v. Me. Ins. Guar. Ass'n*, 2005 ME 104, ¶¶ 9–10, 880 A.2d 284, 286.

Interior] because of their status as Indians." 25 U.S.C.S. § 1903(8). Accordingly, the term "Indian child" as defined by the ICWA means "something more specific than merely having Native American ancestors." *In re Arianna R.G.*, 259 Wis.2d 563, 657 N.W.2d 363, 368 (2003).

[¶ 17] In addressing the burden of proof issue, we reference a provision of the ICWA that requires that a tribe be notified when the court "knows or has reason to know that an Indian child is involved." *See* 25 U.S.C.S. § 1912(a). Section 1912(a) provides:

> In any involuntary proceeding in a State court, where the court *knows or has reason to know* that an Indian child is involved, the party seeking the . . . termination of parental rights to[ ] an Indian child shall notify the parent . . . and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.

25 U.S.C.S. § 1912(a) (emphasis added).

[¶ 18] The ICWA does not define under what circumstances a court "knows or has reason to know" that an Indian child is involved in a termination proceeding for purposes of deciding whether the ICWA applies. Courts have looked to non-binding guidelines issued by the U.S. Department of the Interior, Bureau of Indian Affairs Guidelines for State Courts, Indian Child Custody Proceedings (Guidelines), 44 Fed.Reg. 67584 (Nov. 26, 1979), for guidance when considering whether the ICWA

is implicated in a particular case.[3] *See, e.g., B.H. v. People ex rel. X.H.,* 138 P.3d 299, 302 n. 2 (Colo.2006); *People v. Diane N.,* 196 Ill.2d 181, 256 Ill.Dec. 788, 752 N.E.2d 1030, 1043–45 (2001); *In re Arianna R.G.,* 657 N.W.2d at 369–70.

[¶ 19] The Guidelines state, "In any involuntary child custody proceeding, the state court shall make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe."[4] 44 Fed.Reg. at 67588; *see also In re Arianna R.G.,* 657 N.W.2d at 369. After inquiring, when "a state court has reason to *believe* a child involved in a child custody proceeding is an Indian, the court shall seek verification of the child's status from either the Bureau of Indian Affairs or the child's tribe." 44 Fed.Reg. at 67586 (emphasis added). The Guidelines' "reason to *believe*" standard departs inexplicably from the ICWA's "reason to *know*". standard, 25 U.S.C.S. § 1912(a), but that distinction is not significant to this case.

[¶ 20] The Guidelines describe circumstances under which a State court has "reason to believe" a child involved in a child custody proceeding is an Indian child, which include when:

> (i) Any party to the case, Indian tribe, Indian organization or public or private agency informs the court that the child is an Indian child.

> (ii) Any public or state-licensed agency involved in child protection services

---

**3.** The Guidelines state that they are not intended to have binding legislative effect, and that courts will take the Guidelines into consideration "but they are free to act contrary to what the Department has said if they are convinced that the Department's guidelines are not required by the statute itself." 44 Fed.Reg. 67584 (Nov. 26, 1979).

**4.** The ICWA states that a " 'child custody proceeding' shall mean and include" "foster care placement," "termination of parental rights," "preadoptive placement," and "adoptive placement." 25 U.S.C.S. § 1903(1) (2004). The term does not expressly include a jeopardy hearing, though we note the similarity between a jeopardy hearing and the ICWA's definition of "foster care placement."

or family support has discovered information which suggests that the child is an Indian child.

. . . .

(v) An officer of the court involved in the proceeding has knowledge that the child may be an Indian child.

44 Fed.Reg. at 67586.

[¶ 21]  The Guidelines indicate that the court is obligated to inquire if the child involved in a termination of parental rights proceeding is a member of an Indian tribe, or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.  Pursuant to 22 M.R.S. § 4032(2)(K), the Department shares this obligation.  *See also* Commentary to 44 Fed.Reg. at 67586 ("The guidelines also list several circumstances which shall trigger an inquiry by the court *and petitioners* to determine whether a child is an Indian for purposes of [the ICWA]" (emphasis added)).  However, the party asserting the applicability of the ICWA has the burden to provide sufficient information to at least put the court or Department on notice that the child may be an "Indian child," within the meaning of the ICWA, and that further inquiry is necessary.  *See generally In re Arianna R.G.,* 657 N.W.2d at 370–72; *see also In re J.L.M.,* 451 N.W.2d at 387 ("[A] party to a proceeding who seeks to invoke a provision of the [ICWA] has the burden to show that the act applies in the proceedings.").  The Bureau's response to the Department's request for information recognized a similar burden upon one claiming Indian heritage, stating, "If families declare Indian blood they need to give appropriate information regarding family or relatives who may be Indian, with names, birth dates, place of birth and Tribal affiliation for proper searches to be completed."

[¶ 22]  If, as a result of information it receives, the Department or court has reason to believe that the child may be an Indian child, the Guidelines provide that the Department or court is obligated to verify the child's status either through the Bureau or, if possible, through the tribe at issue.  *See* 44 Fed.Reg. at 67586.  Here the Department and the court complied with their obligations to determine whether Trever is an "Indian child" within the meaning of ICWA. The court affirmatively inquired at the jeopardy hearing whether the father is a member of a federally-recognized Indian tribe, and, based on the father's response, determined that the ICWA did not apply.  The father agreed with that conclusion in the only significant court hearing at which he appeared.  Subsequently, the father alleged to a Department caseworker that he had some Indian heritage, but failed to provide any information to support his allegation.  Even if we were to assume that the father's bare allegation of Indian heritage was sufficient to trigger action on the part of the Department, the Department took the proper action.  Despite the father's failure to identify the tribe, provide other necessary information, or to even remain in regular contact with the Department, the Department attempted to investigate the father's vague claim of Indian heritage by sending a letter, including what information it had to support the father's claim, to the Bureau.[5]  The Department's action in con-

---

5.  The father emphasizes several times that the Department's letter to the Bureau failed to include Trever's birthdate, implying that this demonstrates the Department's failure to carry out its duty to investigate the father's, and thus Trever's, Indian ancestry. However, the father has never indicated, nor is there reason to believe from the record, that Trever is a member of a tribe.  Therefore, Trever's only means of being found an "Indian child" for purposes of the ICWA is if he is eligible for membership in a tribe and is the biological

tacting the Bureau is precisely what is recommended in the Bureau's guidelines.

[¶ 23] On the morning of the termination hearing, more than three years after denying Indian heritage at the jeopardy hearing and two years after alleging that he had some Indian ancestry, the father alleged for the first time, through his attorney, that he thought he had "Cherokee background." This vague and questionable eleventh-hour suggestion of "Cherokee background" did not cause the Department or the court to know or have reason to know that Trever is or might be an "Indian child." *See, e.g., In re Arianna R.G.*, 657 N.W.2d at 370–71 (party's vague assertion of having Chippewa ancestry, but failing to give information accurate or complete enough to allow a determination to be made, did not put the court on notice that the children involved in the proceeding were "Indian children"); *see also Diane N.*, 256 Ill.Dec. 788, 752 N.E.2d at 1044 (father had the burden of producing evidence sufficient to allow the court to determine whether the child was an "Indian child," and two vague references in the record to his claim of Indian heritage and his being the son of a "full-blooded Blackfoot Indian" did not meet this burden); *In re A.L. and J.L.*, 623 N.W.2d 418, 420, 422 (N.D.2001) (holding that a party asserting the applicability of the ICWA must produce evidence for the court to decide whether a child is an "Indian child," and that the ICWA was not invoked based on unsupported and vague statements when nothing in evidence suggested that the children were members of, or eligible for membership in, the Turtle Mountain Indian Tribe or other tribe).

[¶ 24] As one court stated, although the purpose of the ICWA is to permit

child of a member of a tribe. 25 U.S.C.S. § 1903(4). Thus, the critical information needed to begin to determine Trever's status

tribal involvement when tribal members are engaged in child custody matters, "reasonable grounds to believe [that a child is an 'Indian child'] must depend upon the totality of the circumstances and include consideration of not only the nature and specificity of available information but also the credibility of the source of that information and the basis of the source's knowledge." *B.H.*, 138 P.3d at 300, 303–05 (holding, under the facts of that case, that the court could have had reason to believe that the child could have been an Indian child and remanding for further proceedings).

[¶ 25] In the case before us, based on the totality of the circumstances and the father's failure to provide more specific information in the three years preceding the termination hearing, it was not clear error for the court to determine that the father's last-minute assertion of Indian heritage was not credible. Even if the court had halted the proceedings to allow the Department to again contact the Bureau for information, as provided in the Bureau's guidelines, it would have been a futile exercise. The father's asserted potential affiliation with the Cherokee Tribe did not provide the information that the Bureau would have needed, as described in its letter, to determine the father's, or the child's, ancestry.

[¶ 26] While we take very seriously parental rights matters that implicate children of Indian ancestry, here the father did not meet his burden of producing sufficient information to obligate the Department or the court to make further inquiry into his ancestry beyond the steps taken. The court was not required to continue the termination proceeding based on the fa-

as an "Indian child" is not Trever's birth date but the father's relationship information.

ther's vague, last minute, allegation of "Cherokee background."

### B. Motion to Continue

[¶ 27] The father argues that the court abused its discretion and deprived him of a fundamental liberty interest when it denied his motion to continue. He contends that his motion to continue should have been granted on any of three grounds: (1) to allow him to determine his Indian heritage, an argument we have addressed above; (2) because, despite service by publication, the evidence shows that the father did not have actual notice of the hearing until his attorney spoke to him that morning; and (3) he was hospitalized.

[¶ 28] The court's decision to deny a motion to continue is committed to the discretion of the trial judge and is reviewed on appeal only for an abuse of that discretion. *In re Frederick P.*, 2001 ME 138, ¶ 16, 779 A.2d 957, 961; *State v. Reed*, 479 A.2d 1291, 1295 (Me.1984). "A party seeking a continuance has the burden of showing sufficient grounds for granting the motion" and "must make known to the presiding justice *substantial reasons* why granting the continuance would serve to further justice." *Wright & Mills v. Bispham*, 2002 ME 123, ¶ 13, 802 A.2d 430, 433 (quotation marks omitted). Based on the record before us, the court did not abuse its discretion in denying the father's motion for a continuance.

The entry is:

Judgment affirmed.