MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:       2021 ME 61
Docket:         And-21-159
Submitted
 On Briefs:     October 20, 2021
Decided:        December 7, 2021

Panel:          STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.

## IN RE CHILDREN OF MICHELLE C.

HORTON, J.

[¶1]   In this consolidated appeal, Michelle C. challenges a judgment terminating her parental rights to her older child and an order finding that her younger child is in jeopardy in her care, both entered in the District Court (Lewiston, *Archer, J.*).  The father of the older child also challenges the judgment terminating his parental rights to the older child.  We affirm both the judgment terminating the mother's and father's parental rights to the older child and the jeopardy order as to the mother's younger child.

### I.  BACKGROUND

[¶2]   The following facts and procedural history are drawn from the procedural record and the court's findings, entered after the contested consolidated hearing, which are supported by competent evidence in the record.  *See In re Child of Radience K.*, 2019 ME 73, ¶ 2, 208 A.3d 380.

[¶3] The older child has been in the care of the Department since his birth in 2018. The Department petitioned to terminate both the mother's and father's parental rights to the older child in August 2020. The younger child was born in November 2020 and was immediately placed in the care of the Department.[1]

[¶4] At a contested summary preliminary hearing in November 2020 regarding the younger child, the mother raised for the first time the possibility that she has Native American heritage. Based on the information that the mother provided, the Department contacted the Passamaquoddy Tribe at Pleasant Point, the Passamaquoddy Tribe at Indian Township, and the Aroostook Band of Micmacs to determine whether the mother is a member of either of those tribes.[2]

[¶5] On February 22 and 24, 2021, the court held a consolidated hearing to consider (1) termination of the mother's and father's parental rights to the older child and (2) jeopardy of the younger child as to the mother. At the hearing, the Department informed the court that it had heard only from the

---

[1] The identity of the father of the younger child is unknown.

[2] The Passamaquoddy Tribe and the Aroostook Band of Micmacs are the only federally-recognized Passamaquoddy and Micmac tribes in the United States. *See* Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 86 Fed. Reg. 7,554, 7,554, 7,556 (Jan. 29, 2021).

Passamaquoddy Tribe at Pleasant Point, which indicated that the mother was not a member of the Passamaquoddy Tribe. The mother testified once again that she believed that she was connected to the Passamaquoddy Tribe or the Micmac Tribe and that she was a member of the Micmac Tribe. The mother's grandmother also testified to having Chesapeake heritage but stated that she was not a member of any tribe.

[¶6] The court held the record open until March 17 to receive further information regarding the mother's tribal membership status to determine whether the Indian Child Welfare Act (ICWA), 25 U.S.C.S. §§ 1901-1963 (LEXIS through Pub. L. No. 117-65, approved November 23, 2021, with a gap of Pub. L. No. 117-58), was applicable to this case. During that period, the Department also contacted the Bureau of Indian Affairs (the Bureau), but it did not receive a response. The Aroostook Band of Micmacs replied and indicated that the mother was not a member, but the Passamaquoddy Tribe at Indian Township never responded separately from the Passamaquoddy Tribe at Pleasant Point.[3]

[¶7] The court issued orders regarding both children on May 4, 2021. The court affirmatively concluded that ICWA was not applicable and found that

---

[3] The Department supplemented the record with this information via email pursuant to PMO-SJC-3 State of Maine Judicial Branch Pandemic Management Order (revised Dec. 14, 2020).

4

the testimony regarding possible Native American heritage was "intentionally vague and confusing." It then terminated the parental rights of both parents to the older child pursuant to 22 M.R.S. § 4055(1)(B)(2) (2021). The court also found jeopardy as to the mother regarding the younger child. *See* 22 M.R.S. § 4035(2) (2021).

[¶8] The mother and father timely appealed the judgment terminating their parental rights to the older child, and the mother timely appealed the jeopardy order as to the younger child. *See* 22 M.R.S. § 4006 (2021); M.R. App. P. 2B. We consolidated the two appeals.

## II. DISCUSSION

### A. Indian Child Welfare Act

[¶9] The mother's sole argument on appeal is that the court erred in concluding that ICWA did not apply to either of the children. 25 U.S.C.S. §§ 1901-1963. ICWA applies when a child involved in a protective custody proceeding is an "Indian child," defined as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." *Id.* § 1903(4); *see id.* § 1912. Because the court and the Department satisfied their joint obligation under ICWA to determine whether the children are Indian children, we hold that the

court did not err in concluding that ICWA did not apply and thus affirm the judgment and the order entered against the mother.

[¶10]  In *In re Trever I.*, we explained the obligation of the Department and the court to investigate eligibility for tribal membership in the context of ICWA.  2009 ME 59, ¶¶ 21-22, 973 A.2d 752.  We drew heavily upon a 1979 guidance document (the Guidelines) from the Bureau because ICWA itself contains only a general requirement that a tribe be notified when the court "knows or has reason to know that an Indian child is involved."  *Id.* ¶¶ 16-21 (quotation marks omitted) (quoting 25 U.S.C.S. § 1912(a)); Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed. Reg. 67,584 (Nov. 26, 1979). We explained,

> [T]he court is obligated to inquire if the child involved in a termination of parental rights proceeding is a member of an Indian tribe, or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe.  Pursuant to 22 M.R.S. § 4032(2)(K), the Department shares this obligation. . . . [T]he party asserting the applicability of the ICWA has the burden to provide sufficient information to at least put the court or Department on notice that the child may be an "Indian child," within the meaning of the ICWA, and that further inquiry is necessary. . . .
>
> If, as a result of information it receives, the Department or court has reason to believe that the child may be an Indian child, . . . *the Department or court is obligated to verify the child's status either through the Bureau or, if possible, through the tribe at issue.*

6

*Trever I.*, 2009 ME 59, ¶¶ 21-22, 973 A.2d 752 (emphasis added).

[¶11]   In 2015, after our decision in *Trever I.*, the Bureau significantly revised the Guidelines.  They now provide that "[i]f there is any reason to believe that the child is an Indian child, the agency and State court must treat the child as an Indian child, *unless and until it is determined that the child is not a member or is not eligible* for membership in an Indian tribe."  Guidelines for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,151-52 (Feb. 25, 2015) (emphasis added).   In calling for a presumption of "Indian child" status unless and until it is affirmatively determined otherwise, the 2015 Guidelines are considerably stronger than the 1979 version.  *See id.*  Although the updated Guidelines are not binding, their underlying policy goal is certainly in accord with ICWA, so we give deference to the 2015 Guidelines as we did to the 1979 version in *Trever I.*  2009 ME 59, ¶¶ 18-22, 973 A.2d 752.

[¶12]   Here both the Department and the court gave effect to the presumption recommended by the 2015 Guidelines in investigating whether the children were eligible for tribal membership and ultimately determining "that the child[ren] [were] not . . . eligible for tribal membership."[4]  Guidelines

---

[4]  The vague testimony from the mother's grandmother about the mother's possible Chesapeake heritage did not give the court "reason to know" that the children could have been eligible for

for State Courts and Agencies in Indian Child Custody Proceedings, 80 Fed. Reg. 10,146, 10,152 (Feb. 25, 2015). Although the mother met her burden "to provide sufficient information to at least put the court or Department on notice that the child[ren] may [have been] 'Indian child[ren],'" *Trever I.*, 2009 ME 59, ¶ 21, 973 A.2d 752, the Department satisfied its obligation to investigate whether the children were eligible for tribal membership by contacting the relevant tribes and providing their responses to the court, so that the court could meet its own obligation. The Passamaquoddy Tribe at Pleasant Point and the Aroostook Band of Micmacs each confirmed that the mother was not a member. Although the Department did not receive a separate response from the Passamaquoddy Tribe at Indian Township, the response from the Passamaquoddy Tribe at Pleasant Point was sufficient because it confirmed that the mother was "currently not [a] member[] with the Passamaquoddy

---

membership to any tribe from the Chesapeake region. 25 U.S.C.S. § 1912(a) (LEXIS through Pub. L. No. 117-65, approved November 23, 2021, with a gap of Pub. L. No. 117-58). The grandmother testified that she herself was not a member of any tribe, and the mother indicated the possibility that she had a relationship only to the Micmac or Passamaquoddy tribes. Because, under ICWA, the mother would need to be a member in order for the children to be eligible for tribal membership, there was no reason for the court to know that the children could have been eligible for membership to any tribe other than the Micmac or Passamaquoddy tribes. 25 U.S.C.S. § 1903(4) (LEXIS through Pub. L. No. 117-65, approved November 23, 2021, with a gap of Pub. L. No. 117-58).

8

Tribe," without limiting the response to Pleasant Point.[5] The court therefore did not err in concluding that ICWA did not apply to either of the two children.

## B. The Father

[¶13] Contrary to the father's contentions, the court did not err or abuse its discretion in finding, by clear and convincing evidence, at least one ground of parental unfitness and in determining that termination of the father's parental rights is in the best interest of the older child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(iii) (2021); *In re Child of Louise G.*, 2020 ME 87, ¶ 8, 236 A.3d 445; *In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.

The entry is:

> Judgment terminating parental rights affirmed
> and jeopardy order affirmed.

---

[5] Although the Department contacted the Bureau and had not heard back by the time the court closed evidence, a response from the Bureau was unnecessary because the Department or court can "verify [a] child's status either through the Bureau or, if possible, through the tribe at issue." *In re Trever I.*, 2009 ME 59, ¶ 22, 973 A.2d 752.

David Paris, Esq., Bath, for appellant father

Jason A. MacLean, Esq., Bridgton, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket numbers PC-2018-18 and PC-2020-102
FOR CLERKS REFERENCE ONLY