MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2022 ME 14
Docket:        Wal-21-203
Submitted
  On Briefs:   December 21, 2021
Decided:       February 17, 2022

Panel:         STANFILL, C.J., and MEAD, GORMAN, JABAR, HORTON, and CONNORS, JJ.

## IN RE CHILD OF KENNETH S.

JABAR, J.

[¶1]  In this consolidated appeal, the father challenges the termination of his parental rights as to his child entered in the District Court.  (Belfast, *Worth, A.R.J.*).  The mother raises an appeal conditioned on our vacating the District Court's termination of the father's parental rights.[1]  We affirm the judgment as to both parents.

## I.  BACKGROUND

[¶2]  The facts are drawn from the court's findings, which were entered after a five-day consolidated hearing and are supported by competent record evidence.  *See In re Children of Michelle C.*, 2021 ME 61, ¶ 2, 264 A.3d 1221.

---

[1]  The mother argues that, if we were to vacate the trial court's termination of parental rights to the father based on any of his challenges, it would not be in the child's best interest to terminate her rights.  Because we affirm the order terminating the father's parental rights, we need not reach this argument.  Additionally, as discussed below, the trial court's determinations as to parental unfitness of the mother and best interest of the child were supported by competent record evidence.

2

[¶3]  Shortly after the child was born in 2010, the father was granted sole parental rights and responsibilities and primary residence of the child, and the mother's contact was limited to supervised visits.[2]  Prior to 2018, the father had sought mental health treatment for the child because the child was often dysregulated in his emotions and actions.  In March 2018, police performed a welfare check on the child's residence and found the child locked in his room.  In an interview, the child stated that his father dragged him up the stairs by the hood of his sweatshirt and locked him in his room.  The father was charged with domestic violence assault related to this incident and was prohibited from having contact with the child.[3]  Pursuant to a safety plan between the father and the Department of Health and Human Services, the child was placed with his maternal grandparents but remained in the father's custody.

[¶4]  After the child had several behavioral incidents in April and May 2018, and after healthcare and educational professionals had difficulty engaging with the father, the father asked the Department to take custody of the child.  On May 15, 2018, the Department filed a petition for child protection

---

[2] Between 2010 and 2018, the Department of Health and Human Services investigated the parents several times due to its concern about the parents' ability to care for the child but never opened a case.

[3]  This charge was later dismissed pursuant to a plea agreement where the father pleaded guilty to disorderly conduct and was ordered to pay a fine.

that included a request for a preliminary protection order. The court (*Mathews, J.*) granted the Department custody of the child that same day. The Department continued the child's placement with the maternal grandparents.

[¶5]  On August 16, 2018, the court (*Fowle, J.*) entered a jeopardy order, by agreement, as to each parent.  The order as to the father stated that the father caused the child to be in circumstances of jeopardy due to the threat of physical and emotional harm and the deprivation of needed medical care.  The order as to the mother stated that the mother posed "the threat of injury and the deprivation of adequate supervision and care."

[¶6]  On December 4, 2019, the Department filed a petition to terminate the parental rights of both parents.  On March 9, 2020, the father filed a motion to continue the termination hearing, and, on March 12, the father's attorney moved for leave to withdraw; the court (*Davis, J.*) granted both motions.  The father requested a new attorney.  He claimed that his attorney was to delete certain portions of the agreed-to jeopardy order, by agreement with the state, and had failed to move the court to amend the order to reflect those deletions. The court appointed a new attorney on March 16, 2020.  Following several further continuances, the petition was eventually heard over five days, almost a year later, on January 25, March 30, April 1, May 21, and May 24, 2021.

4

[¶7]  At the close of the hearing, the court (*Worth, A.R.J.*), made no findings or indication of its decision, instead stating that it was going to review the exhibits and statutes and write a decision "as quickly as [it could]."  The court, then, through a clerk, via email, notified all parties that it was requesting a proposed order and findings only from the Department.  The father filed a memorandum objecting to the court's request and "propose[d] that *no parties* provide any proposed orders and findings or that *all parties* provide proposed orders and findings."  The court denied the father's objection stating that it "had ample opportunity to understand [the father's] positions taken, and his likely proposed findings and conclusions."  The court received the proposed order and findings from the Department on June 9, 2021.

[¶8]  On June 14, 2021, the court entered its termination order, finding that the parents were unwilling or unable to protect the child from jeopardy or take responsibility for the child in a time reasonably calculated to meet the child's needs and that termination was in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii) (2021).

[¶9]  The court found the father unfit based on the child's high needs, the father's own mental health needs, the father's erratic therapy attendance, the father's claim that he was in therapy only because the Department demanded

it, the Department's need to suspend visits because of the inappropriate interactions between the father and the child that upset the child to the point where the child no longer wanted to attend visits, and the father's continual denial of the inappropriateness of his actions that caused the need for the Department's involvement.

[¶10]  The court found the mother unfit based on her significant health needs that had occasionally led to her being hospitalized, and because, since April 2019, she had seen the child only while supervised.  The mother had declined to have more frequent visits with the child and had stated that she did not believe that she could parent the child on a regular basis.

[¶11]  The court found that the child's well-being had improved since he began living with his grandparents.  The child also expressed his desire to stay with his grandparents.

[¶12]  Both parents timely appealed.  *See* 22 M.R.S. § 4006 (2021); M.R. App. P. 2B(c)(1).

[¶13]  On July 2, 2021, the father also filed a motion for relief from the judgment, alleging ineffective assistance of counsel by the father's first attorney.[4]  M.R. Civ. P. 60(b).  On October 20, 2021, the court (*Martin, J.*), denied

---

[4] On August 20, 2021, we permitted the trial court to act on the father's motion for relief.

6

the father's motion, stating that the father had failed to make a prima facie showing of ineffective assistance of counsel and that the motion was untimely filed.

## II. DISCUSSION

[¶14]  On appeal, the father raises three arguments.  He argues that the court erred by denying his request to submit a proposed order while allowing the Department to submit a proposed order, and such an error amounted to the denial of a closing argument and violated his procedural due process rights.  He also argues that the trial court used language in its order that inappropriately shifted the burden of persuasion to the father.[5]   Finally, he argues that his attorneys provided ineffective assistance of counsel, necessitating remand.

## A.    Due Process

[¶15]  The father contends that the court was required to allow him to present a proposed order and that the court's failure to allow him to present

---

[5]  This argument, based on the court's imprecise use of language, is unpersuasive, and does not warrant extended discussion.  A review of the decision as a whole demonstrates that the court properly placed the burden of persuasion on the Department.  The burden remains on the Department at all times to prove parental unfitness by clear and convincing evidence. *See, e.g.*, *In re Forest G.*, 2017 ME 26, ¶ 4, 155 A.3d 879.

proposed findings while requesting that the Department present a proposed order and findings was a violation of due process.[6]

[¶16]  The state must use procedures that align with due process requirements when terminating parental rights.  *In re C.P.*, 2016 ME 18, ¶ 17, 132 A.3d 174.  This requirement allows for "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect."  *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222 (quotation marks omitted).  Courts determine if there has been a due process violation based on

> (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such an interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including the fiscal and administrative burdens that additional procedures might entail.

*Id.* (quotation marks omitted).  We "review de novo whether an individual was afforded procedural due process."  *In re Children of Benjamin M*, 2019 ME 147, ¶ 8, 216 A.3d 901.

---

[6] The father also contends that not allowing him to submit a proposed order is akin to not allowing him to make a closing argument.  However, even if we equate a proposed order with a closing argument, there is no right to make or submit a closing argument in child protection proceedings. *See In re M.B.*, 2013 ME 46, ¶¶ 26-29, 65 A.3d 1260 (holding that parents in a termination of parental rights proceeding "are not entitled to closing argument as a matter of right" (quotation marks omitted)).

8

[¶17]   When addressing a due process challenge, the first factor we consider is the private interest that will be affected by the court's action.  The private interest at issue here involves the termination of a parent's constitutional right to raise his children, and we have held that "parents must be afforded the utmost in procedural protection when the state deprives them of their parental rights." *In re Chelsea C.*, 2005 ME 105, ¶ 11, 884 A.2d 97 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).  This factor weighs heavily in favor of requiring a court to allow a parent to submit a proposed order and findings when allowing the Department to submit a proposed order and findings.

[¶18]  The second factor involves a determination of whether the process adopted carries a "risk of an erroneous deprivation . . . and [of] the probable utility of additional or substitute procedural safeguards."  *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222 (quotation marks omitted).  At the conclusion of the hearing, the trial court did not render a decision.  Rather, it indicated that it would review the evidence and "write a decision as quickly as [it could]."  The process the trial court used here—where only the Department was allowed to submit a proposed order—could have had a significant impact upon the court's

decision. The obvious procedural safeguard would have been to allow the father to submit a proposed order and findings.

[¶19] The third factor in a procedural due process analysis—the additional fiscal and administrative burden associated with adopting any extra procedural safeguards—also weighs in favor of the father. Allowing the father to submit a proposed order and findings would have imposed a negligible administrative burden on the court.

[¶20] After considering all the factors, we conclude that the trial court erred because its refusal to allow the father to submit a proposed order and findings while simultaneously requesting that the Department to submit a proposed order and findings involved a significant private interest and carried an inherent risk of an erroneous deprivation of his parental rights.

[¶21] When the court chooses to allow or request the submission of proposed orders and findings or to allow oral argument, it may not extend the opportunity to one side and not the other. If the court has yet to rule, a request for argument or a proposed order is in substance an invitation for advocacy, and the opportunity to advocate, if it is granted, must be extended equally.[7] The

---

[7] If the court's request is made after the court has ruled, the request can be made of the prevailing party only, but good practice, if not due process, calls for the opposing party to be allowed to comment on whether the prevailing party's submission accurately reflects the court's ruling.

principle of equality of access to the courts is rooted in the Due Process Clause of the United States Constitution. *See Harrington v. Harrington*, 269 A.2d 310, 314 (Me. 1970) ("[E]qual access to the civil courts was among the Fourteenth Amendment's primary objectives."); U.S. Const. amend. XIV. In this instance, given that the court had not yet ruled, the court should not have invited the Department to submit a proposed order without affording the father the same opportunity.[8]

[¶22] Notwithstanding the trial court's error, to assert a procedural due process error on appeal, a party must articulate an identifiable prejudice.

> The vacating of an order entered after a procedural error is not automatic. To vacate such an order, this Court must determine that it was entered after a process that was "inconsistent with substantial justice." M.R. Civ. P. 61. We have held that an appellant, to be successful, must demonstrate both error and prejudice resulting to the appellant from the claimed error.

*S. Me. Props. Co. v. Johnson*, 1999 ME 37, ¶ 9, 724 A.2d 1255.

[¶23] Here, the court's procedural error did not prejudice the father. In terms of prejudicing a parent's case, we have stated "[i]n termination cases, where fundamental interests are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present

---

[8] We focus on the requirements of the U.S. Constitution because the father has based his appeal solely on a claim of a violation of the Due Process Clause of the U.S. Constitution.

witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *In re Child of James R.*, 2018 ME 50, ¶ 17, 182 A.3d 1252 (quotation marks omitted). Here, the father had notice of the issues and had a five-day hearing where he testified and responded to the claims and evidence the Department presented against him. The concern is whether the trial court, having access only to the Department's proposed findings, could be an impartial fact-finder. The father does not challenge the court's independent judgment, stating that "[t]his case has nothing to do with whether the trial court exercised its 'judicial function' or 'independent judgment.'" Even if this had been challenged, however, the record indicates that the court did exercise its independent judgment and did not adopt the Department's proposed order verbatim. *See In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972 ("[A] verbatim adoption of findings proposed by one party . . . is disfavored, as such an approach suggests that the court has not applied its independent judgment in making its findings and conclusions.").

[¶24] A review of the record indicates that the trial court's decision to accept a proposed order and findings only from the Department did not affect the outcome of the case.

[¶25] The trial court identified two bases of parental unfitness as to the parents—(1) their unwillingness or inability to protect the child from jeopardy and the unlikelihood these circumstances would change within a time reasonably calculated to meet the child's needs and (2) their unwillingness or inability to take responsibility for the child within a time reasonably calculated to meet the child's needs. 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii). The court's findings with regard to the father's unfitness were fully supported by the testimony presented during the trial that demonstrated, inter alia, that the father struggled to attend therapy, declined to engage with intensive outpatient therapy, did not engage in parenting classes despite urging from the Department, and had multiple inappropriate visits with the child. The father himself testified that he did not completely recognize that locking the child in his room was inappropriate. He also testified that he was attending therapy only because the Department required him to do so. The court's decision concerning the mother was supported by testimony that, during the period between the jeopardy hearing and the trial, the mother had been hospitalized several times due to her mental illness and had declined to expand visitation because she did not feel capable of being a mother.

[¶26]  With regard to the best interest of the child, the trial court's conclusion was supported by testimony from school officials, social workers, therapists, and the father about the child's extensive needs and the child's improvements since living with his grandparents.  Notably, the mother agrees with the court's determination on best interest, asserting, on appeal, that she "believes it is in her child's best interests that both parents' rights be terminated."

[¶27]  In summary, the trial court's procedural error did not prejudice the father's due process rights because the error did not affect the outcome of the case.  The record contains overwhelming evidence to support the court's determinations that the parents were unfit and that termination of their rights was in the best interest of the child.

## B.    Ineffective Assistance of Counsel

[¶28]  The father also argues that his first attorney rendered ineffective assistance of counsel when he failed to delete certain portions of the initial jeopardy order, resulting in some facts being erroneously deemed admitted for future proceedings, and that his second attorney then failed to make a timely challenge to the jeopardy order based on the first attorney's ineffective assistance.  When analyzing a claim of ineffective assistance of counsel, we use

14

the *Strickland* standard, which requires proof of deficient performance and resulting prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *In re M.P.*, 2015 ME 138, ¶¶ 23-27, 126 A.3d 718. We have stated that the procedural requirements for a claim of ineffective assistance at the jeopardy stage are the same as those required at the termination-of-parental-rights stage. *In re Child of Radience K.*, 2019 ME 73, ¶ 59, 208 A.3d 380. These claims can be raised on "direct appeal if the record already contains the basis for the claim." *Id.* ¶ 58. We have emphasized that the "need for a swift resolution of ineffectiveness claims at the termination stage of child protection proceedings applies just as forcefully at the jeopardy stage." *Id.* ¶ 59 (citation and quotation marks omitted).

[¶29] Although the initial jeopardy order was entered before our decision in *Radience K.*, either of the father's attorneys could have raised the issues with the jeopardy order when *Radience K.* was published. Because the father had specifically raised issues with how the first attorney had handled the jeopardy order when the father's first attorney was replaced, the father's second attorney was on notice of the issues. That attorney failed to raise those issues until after the court terminated the father's parental rights. Although the father's claim of ineffective assistance of counsel concerning the jeopardy order

is not timely, we nonetheless address it in the context of the appeal from the order terminating his parental rights.[9]

[¶30]  We begin our analysis by considering the second prong of the *Strickland* test, determining whether any potential deficient performance was prejudicial.  We review this prong by examining "whether [the] ineffective assistance of counsel rose to the level of compromising the reliability of the judgment and undermining confidence in it." *In re Children of Jeremy A.*, 2018 ME 82, ¶ 21, 187 A.3d 602 (alteration and quotation marks omitted).  Importantly, this appeal is a challenge to the termination of the father's parental rights, not to the jeopardy order or the court's ruling on the father's Rule 60(b) motion.  Ultimately, while the father argues that there were several ways in which he was prejudiced, he fails to show how the court's decision to terminate his parental rights was affected by his attorneys' failure to move the court to amend the jeopardy order, for at least two reasons.  First, it is unclear how much of the jeopardy order the father now disputes.  Second, while the trial court referred to the jeopardy order in its order terminating parental

---

[9]  "To bring a claim of ineffective assistance of counsel . . . on direct appeal . . . the parent making the claim must submit a signed and sworn affidavit stating, with specificity, the basis for the claim." *In re M.P.*, 2015 ME 138, ¶ 21, 126 A.3d 718.  The father submitted a two-page affidavit with the appellant's brief on October 12, 2021.

rights, it also relied on the testimony of numerous witnesses, including the father's testimony and reports of events occurring in the almost three years between entry of the jeopardy order and the termination of parental rights hearing. Nothing in the record indicates that any of the agreed-upon findings at issue made any difference in the trial court's decision to terminate his parental rights. Because the father fails to show how changes to the jeopardy order would have changed that outcome, the father fails to prove the second prong of the *Strickland* test, prejudice.

[¶31] Because we conclude that any potential ineffective assistance of counsel rendered by the father's attorneys did not result in any prejudice to his case, we do not address the first prong of the *Strickland* test, whether the assistance rendered to him was deficient.

### III.  CONCLUSION

[¶32] Although we conclude that the trial court erred by requesting and receiving a proposed order and findings only from the Department and rejecting the father's request to submit a proposed order and findings, the father was not denied due process because he was not prejudiced by the trial court's error. Furthermore, the father failed to prove his claim of ineffective assistance of counsel.

The entry is:

Judgment affirmed.

—————————

Rory A. McNamara, Esq., Drake Law LLC, York, for appellant father

Joseph W. Baiungo, Esq., Belfast, for appellant mother

Aaron M. Frey, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Belfast District Court docket number PC-2018-11
FOR CLERK REFERENCE ONLY