2001 ME 78

**In re RICHARD G. Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs: April 2, 2001.

Decided: May 10, 2001.

Philip A. Notis, Esq., South Portland, for appellant.

G. Steven Rowe, Attorney General, Michael C. Kearney, Asst. Attorney General, Chad Cloutier, Law Student Intern, Augusta, for appellee.

Willo Scott Wright, CASA, West Bath, Guardian ad Litem.

Christopher Dilworth, Esq., Falmouth, James Hewes, Esq., Portland, for parents.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] The paternal grandmother of Richard G. appeals from a judgment of the District Court (Portland County, *Lawrence, J.*) denying her request that Richard be placed in her home. The grandmother contends that she has a fundamental liberty interest in having Richard placed with her pursuant to the Due Process Clause, U.S. CONST. amend. XIV, § 1;[1] ME. CONST. art. 1, § 6-A,[2] and the court should have awarded her custody unless the court found that to do so would have placed the child in jeopardy, 22 M.R.S.A. § 4002(6) (1992).[3] Instead, the court applied the best interests of the child standard, 22 M.R.S.A. § 4005-B(4) (Supp.2000),[4] and continued interim custody with unrelated foster parents. We affirm the judgment.[5]

[¶ 2] The Department of Human Services removed Richard G. from his mother's residence on May 4, 1999, primarily because of her substance abuse. Richard's father is in prison. Following a determination that Richard was in jeopardy with his mother, Richard's paternal grandmother intervened and requested that Richard be removed from his foster home to be placed in her home. The court conducted a hearing, after which it concluded that it

1. The Fourteenth Amendment provides, in relevant part: "No State … shall … deprive any person of life, liberty, or property, without due process of law …."

2. Article I, section 6-A provides, in relevant part: "No person shall be deprived of life, liberty or property without due process of law …."

3. 22 M.R.S.A. § 4002 provides, in relevant part:

   **6. Jeopardy to health or welfare or jeopardy.** "Jeopardy to health or welfare" or "jeopardy" means serious abuse or neglect, as evidenced by:
   A. Serious harm or threat of serious harm;
   B. Deprivation of adequate food, clothing, shelter, supervision or care, including health care when that deprivation causes a threat of serious harm;
   C. Abandonment of the child or absence of any person responsible for the child, which creates a threat of serious harm; or
   D. The end of voluntary placement, when the imminent return of the child to his custodian causes a threat of serious harm.

4. 22 M.R.S.A. § 4005-B provides, in relevant part:

   **4. Request for placement.** In any proceeding when standing and intervenor status have been granted, the grandparent may request the court to order that the child be placed with the grandparent. In making a decision on the request, the court shall give the grandparents priority for consideration for placement if that placement is in the best interests of the child and consistent with the purposes listed in section 4003.

   Section 4003 lists five purposes for the child protection statutes: (1) to authorize DHS to protect and assist abused or neglected children, children at risk, and their families; (2) to authorize the removal of children in jeopardy from their parents' custody; (3) to prioritize reunification and rehabilitation of families without causing needless delays in making permanent plans for children; (4) to promote the swift establishment of permanent plans; and (5) to require periodic DHS reports to the legislature. 22 M.R.S.A. § 4003 (1992 & Supp.2000).

5. Ordinarily no appeal is available from an order entered pursuant to 22 M.R.S.A. §§ 4005-B or 4038. *See* 22 M.R.S.A. § 4006 (Supp.2000). In these unique circumstances, when a party has challenged the constitutionality of the statute and that challenge may evade review, we accept the matter for appellate review.

was not in Richard's best interest to be placed with his grandmother because Richard has a history of seizures; the grandmother planned to allow her thirteen-year-old daughter or her live-in boyfriend, against whom she had obtained a protection from abuse order,[6] to care for Richard while she worked; the grandmother has a son living with her who has an attention deficit disorder; they live in a small apartment; and the grandmother failed to consider Richard's needs when she concluded that Richard's foster mother was "blowing [her] off" on Richard's birthday when the foster mother reported to the grandmother that Richard was too tired from the Thanksgiving holiday to visit the grandmother.

[¶ 3] The grandmother contends that the court should have applied the jeopardy standard, 22 M.R.S.A. § 4002(6), instead of the best interests of the child standard, 22 M.R.S.A. § 4005–B(4), because she has a fundamental liberty interest in having Richard placed with her pursuant to the Due Process Clause. According to the grandmother, the jeopardy standard protects her fundamental right while also protecting Richard's health and welfare.

[¶ 4] DHS contends that the court's actions did not deprive the grandmother of any due process rights. According to DHS, the grandmother does not have a fundamental liberty interest in the placement of Richard, and the best interests of the child standard set forth in section 4005–B(4) is constitutional.

[¶ 5] The Legislature provided for child protective proceedings because it "[r]ecogniz[ed] that the health and safety of children must be of paramount concern and that the right to family integrity is limited by the right of children to be protected from abuse and neglect . . . ." 22 M.R.S.A.

§ 4003 (Supp.2000). The statute provides only that interference with *parents*' rights to custody of their children requires a finding of jeopardy. 22 M.R.S.A. § 4003(2) (1992). When considering a grandparent intervenor for the purposes of placement, "the court shall give the grandparents priority for consideration for placement if that placement is in the best interests of the child and consistent with the purposes listed in section 4003." 22 M.R.S.A. § 4005–B(4).

[¶ 6] We presume that the challenged statute, i.e., section 4005–B(4), is constitutional. *See Rideout v. Riendeau*, 2000 ME 198, ¶ 14, 761 A.2d 291, 297. "[T]he person challenging the constitutionality has the burden of establishing its infirmity." *Id.* (citation and internal quotation marks omitted). "[I]f we can reasonably interpret [the] statute as satisfying [the] constitutional requirements, we must read it in such a way . . . ." *Id.* ¶ 14, 761 A.2d at 297–98. We may decide only the limited constitutional issue presented in a case. *Id.* ¶ 15, 761 A.2d at 298.

[¶ 7] The United States Supreme Court has established the following analysis for substantive due process:

First, we have regularly observed that the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the

6. The grandmother failed to inform DHS of the protection from abuse order until she had had two months of in-home visits with Richard.

crucial guideposts for responsible decisionmaking that direct and restrain our exposition of the Due Process Clause. *Green v. Comm'r of Mental Health & Mental Retardation*, 2000 ME 92, ¶ 13, 750 A.2d 1265, 1270 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720–21, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997)). "When a state infringes on one of these fundamental rights or liberties, the infringement must be narrowly tailored to serve a compelling government interest." *Id.* (citation omitted).

[¶ 8] The grandmother cites *Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), contending that she is entitled to the jeopardy standard because grandparents have a constitutionally protected right to maintain their families. In *Moore*, the Supreme Court held unconstitutional a municipal housing ordinance that defined "family" so narrowly that a grandson could not legally occupy his grandmother's dwelling following the death of his mother. *Id.* at 495–98, 506, 97 S.Ct. 1932. The Court reasoned that the child rearing decisions of a grandparent residing with the child were entitled to constitutional protection because the grandparent may have a major responsibility for rearing the child and because in times of adversity, economic need may bring the grandparent and child together. *Id.* at 504–05, 97 S.Ct. 1932.

[¶ 9] The right of a grandparent to have her grandchild live with her unfettered by a municipal housing · ordinance is not equivalent to the right of a grandparent to have her grandchild, who was found to be in jeopardy, placed with her notwithstanding the best interests of that child. *Cf. Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir.1995) ("*Moore* was a case about breaking up an existing family unit, not a case about creating an entirely new one.... A negative right to be free of governmental interference in an already existing familial relationship does not translate into an affirmative right to create an entirely new family unit out of whole cloth."). The holding of *Moore* does not suggest that a noncustodial grandparent's rights are equivalent to those of a custodial parent in the context of child protective proceedings. *See People in the Interest of C.E.*, 923 P.2d 383, 385 (Colo.Ct.App.1996) (rejecting argument of maternal aunt that *Moore* "establishes a fundamental liberty interest in favor of an extended family member to the society or custody of a related child").

[¶ 10] We recently concluded, in response to a challenge by fit parents to the Grandparents Visitation Act, that the Act withstands constitutional scrutiny because it is narrowly tailored to serve the ·"compelling state interest in addressing the children's relationship with the [grandparents] who have cared for them as parents." *Rideout*, ¶ 33, 761 A.2d at 303. "This interest springs not from any common law right of the grandparent to visitation with the child, but from the child's significant need to be assured that he or she will not unnecessarily lose contact with a grandparent who has been a parent to that child." *Id.* ¶ 26, 761 A.2d at 301. We indicated that "[g]randparents simply do not have a general common law or constitutional right of access to their grandchildren." *Id.* ¶ 26, n. 16, 761 A.2d at 301, n. 16; *see also Orange County Soc. Servs. Agency v. Frances S. (In re Gary P.)*, 40 Cal.App.4th 875, 46 Cal.Rptr.2d 929, 930 (1995) ("grandparents have no absolute right to custody of their grandchildren").

[¶ 11] In challenging the constitutionality of section 4005–B(4), the grandmother lacks the "fundamental liberty interest" of the parents who challenged the Grandparents Visitation Act. *Rideout*, ¶ 18, 761 A.2d at 299. A grandparent possesses no constitutional right to access the child.

*Id.* ¶ 26, n. 16, 761 A.2d at 301, n. 16. Furthermore, her interests do not align with the state's interest, articulated in *Rideout,* that the needs and well-being of the child must be paramount. *See id.,* ¶ 26, 761 A.2d at 301. The grandmother lacks a constitutionally protected interest in Richard's placement.

[¶ 12] We conclude that the "best interests of the child" standard is constitutional when applied to a grandparent after a finding that the child is in jeopardy with his parents. Because a non-custodial grandparent lacks a constitutional right equivalent to the right of a custodial parent, the grandmother has no constitutionally protected interest to weigh against the state's interest in the well-being of the child. The statute's provision that a grandparent shall have priority consideration for placement if it is in the child's best interests, 22 M.R.S.A. § 4005–B(4), does not deprive the grandmother of due process.

The entry is:

Judgment affirmed.