2005 ME 14

**Nancy BRADSHAW**

v.

**Christopher BRADSHAW.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 9, 2004.

Decided: Jan. 21, 2005.

---

Kathleen T. O'Boyle, Presque Isle, for plaintiff.

Joseph L. Goodman, Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Christopher Bradshaw appeals from a divorce judgment entered in the District Court (Houlton, *O'Mara, J.*). Christopher contends (1) that the divorce judgment, entered in December 2003, was affected by previous actions of the court (*Griffiths, J.*), taken in a September 2003 hearing; (2) that the court acted beyond its discretion in September when it allowed his attorney to withdraw from representing him shortly before a scheduled contempt hearing, and when the court took no action to continue the contempt hearing following the withdrawal; and (3) that the divorce judgment, entered following a hearing conducted several months after the contempt proceedings, reflected an improper determination of both spousal support and the distribution of property. Because we conclude that any error committed by the court at the time of the contempt proceedings did not result in prejudice to Christopher in the divorce judgment, we affirm that judgment.

## I. BACKGROUND

[¶ 2] Christopher and Nancy Bradshaw were married in 1976. Soon after, Christopher spent fifteen years in prison following a homicide conviction in another state. Until the time of his release, Nancy raised their two sons and visited her husband two or three times per week.

[¶ 3] Nancy filed for divorce in 2002. The court entered a preliminary order preventing Christopher from selling or giving away any property owned individually or jointly by the couple. Christopher did not comply with this order, and Nancy filed a motion for contempt. Nancy also filed a motion for sanctions, alleging discovery violations, and a motion seeking spousal support pending the final divorce decree. The court granted the motion for spousal sup-

port, finding Christopher to be "willfully underemployed." Again, Christopher did not comply with this order, and Nancy filed a second motion for contempt.

[¶ 4] Fourteen days before the hearing on these contempt motions, scheduled for September 11, 2003, Christopher's attorney moved to withdraw, citing Christopher's "non-cooperation." The court granted the attorney's motion one week later pursuant to M.R. Civ. P. 89(a). Christopher appeared unrepresented at the September hearing, and told the court that he did not know until that morning that his attorney had withdrawn. The court acknowledged that Christopher was acting pro se. Christopher made no request that the hearing be continued, and the court proceeded to conduct the hearing.

[¶ 5] Following the September hearing, the court found Christopher to have not cooperated in discovery, and to be in contempt of court. The court ordered Christopher to pay spousal support to avoid incarceration. Because of Christopher's failure to provide discovery information to Nancy, the court prohibited Christopher from "supporting or opposing any claim with respect to value or distribution of marital property, designation of non-marital property, or alimony."

[¶ 6] At the divorce hearing, held several months later, in December of 2003, Christopher appeared pro se. He complained that the previously issued contempt order was unfair because he was not represented by counsel at the contempt hearing. The court noted that the parties were bound by the order. The court, however, allowed Christopher to testify extensively at the hearing about his assets and his recent employment history, and to specify which property he wanted to receive. The divorce judgment divided the real property between the parties. It set aside all the

personal property remaining in Maine to Nancy, and the property located outside of Maine to Christopher. The court also granted spousal support to Nancy based on their twenty-seven years of marriage and Nancy's contributions to the marriage. Christopher appealed.

## II. DISCUSSION

[¶ 7] Christopher contends that the court acted beyond its discretion by failing to grant him a continuance from the September 11 contempt hearing. A party seeking a continuance must show sufficient grounds for granting the motion and "must make known to the presiding justice *substantial reasons* why granting the continuance would serve to further justice." *Wright & Mills v. Bispham*, 2002 ME 123, ¶ 13, 802 A.2d 430, 433 (citation omitted).

[¶ 8] Christopher filed no written motion to continue. He contends that he made an informal motion to continue, but the record does not indicate that any such motion was made. At the hearing, Christopher did express concern to the court that his attorney was no longer representing him, but he continued to represent himself, and made no mention of a continuance. Furthermore, Christopher did not articulate to the court any reasons why the hearing should not go forward.

[¶ 9] A trial court is not obligated to order a continuance *sua sponte*, without prompting by one of the parties, unless substantial and obvious prejudice can be avoided only by doing so. Christopher did not move for a continuance of the September hearing, and the contempt finding made by the court is supported in the record. Christopher has not demonstrated that the court's failure to grant a continuance *sua sponte* resulted in obvious and substantial prejudice to him.

[¶ 10] Christopher also argues that the court acted beyond its discretion when it allowed Christopher's attorney to withdraw. The decision on whether to grant an attorney's motion to withdraw is "within the discretion of the trial justice." *Blessing v. Dow Chem. Co.*, 521 A.2d 1176, 1179 (Me.1987). "In general the court should attempt to avoid prejudice to the client of the withdrawing attorney and at the same time avoid delay to the court and opposing counsel." *Id.* at 1179 (citation omitted). Leave to withdraw should only be allowed "after a clear demonstration that such can be done without prejudice to the client." *Berry v. Berry*, 388 A.2d 108, 109–10 n. 2 (Me.1978).

[¶ 11] We agree that the court may have acted beyond its discretion when it granted the motion of Christopher's attorney and allowed him to withdraw. The withdrawal occurred within a week of a scheduled hearing on Nancy's motions for contempt and for sanctions, and left Christopher, who asserts he was without notice of the withdrawal, unrepresented and with little time to prepare for the hearing.[1] The hearing on contempt, at which Christopher proceeded pro se, resulted in a sanction being imposed against Christopher, restricting him from presenting evidence on the value or distribution of martial property, and the designation of marital property and alimony. Had the court strictly enforced the sanction imposed in September at the December divorce hearing, Christopher may have been irreparably prejudiced by the withdrawal of his attorney. The record discloses, however, that Christopher did not suffer any actual prejudice in the later December divorce hearing. *See* M.R. Civ. P. 61. As noted above, Christopher was able to testify to his recent employment history, earnings, and his preference for the available marital property. This testimony was extensive, and served to eliminate the actual prejudice that Christopher would have suffered had the court strictly adhered to the September order restricting the evidence he could present at the divorce hearing.

[¶ 12] Moreover, the provisions of the divorce judgment do not support Christopher's allegations that the court acted beyond its discretion or erred in awarding spousal support and in dividing marital property.

[¶ 13] The court's determination of spousal support pursuant to 19–A M.R.S.A. § 951–A(5) (Supp.2004), is reviewed for sound judicial discretion, and we review the decision with great deference. *See Pelletier v. Pelletier*, 597 A.2d 60, 62 (Me.1991). The trial court is "vested with broad powers to order one spouse to pay alimony to the other so long as the amount is reasonable and the court takes into account the payor spouse's ability to pay and the payee spouse's needs and opportunities." *Id.*

[¶ 14] Christopher and Nancy were married for twenty-seven years. For fifteen of those years, Christopher was incarcerated. Throughout his years of incarceration, Nancy raised both of their sons, worked, provided a home, and consistently visited her husband. She continued to work after his release. She demonstrated her entitlement to spousal support, and the court did not act beyond its discretion in awarding such support.

---

1. The attorney indicated in the motion to withdraw that he would notify his client, Christopher, but it is not clear from the record that such notice was given. *See Blessing*, 521 A.2d at 1179–80 (noting that the objectives of avoiding prejudice to the client and avoiding delay "are best served by giving the client notice and opportunity to be heard") (citation omitted).

[¶ 15] Similarly, the division of property is "within the court's sound discretion ... and the judgment of the [trial] court on such matters is entitled to substantial deference." *Tibbetts v. Tibbetts,* 2000 ME 210, ¶ 6, 762 A.2d 937, 939 (citation omitted). We will only overturn a court's distribution of property " 'if there is a violation of some positive rule of law or if the division results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument.' " *Libby v. Libby,* 2001 ME 130, ¶ 6, 781 A.2d 773, 775 (quoting *Doucette v. Washburn,* 2001 ME 38, ¶ 23, 766 A.2d 578, 586).

[¶ 16] The court concluded that all of the parties' property, which consisted of both real and personal property located within and outside of Maine, was marital property. Based on Nancy's contributions to the family during twenty-seven years of marriage, and her financial contributions to the purchase of property, the court awarded Nancy three parcels of real property with a net value of $31,657, including their former marital home. The court awarded Christopher two parcels of real property with a net value of $6000. The court also awarded both parties personal property according to its location.[2] The division of marital property was well within the court's discretion, *see Libby,* 2001 ME 130, ¶ 6, 781 A.2d at 775, and does not appear to have been affected by any restrictions placed on Christopher's ability to present evidence.

The entry is:

Judgment affirmed.

2. Christopher received a substantial amount of personal property that he had removed from the State of Maine, including vehicles, tools, and construction materials, most of which was related to his business.