2011 ME 13

**In re CHRISTOPHER H.**

Supreme Judicial Court of Maine.

Argued: Oct. 4, 2010.
Decided: Jan. 18, 2011.

---

Mark C. Joyce, Esq. (orally), Disability Rights Center of Maine, Augusta, ME, for Christopher H.

Janet T. Mills, Attorney General, Michelle M. Robert, Asst. Atty. Gen., Katherine Greason, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, ME, for the Maine Department of Health and Human Services.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

LEVY, J.

[¶ 1] Christopher H. appeals from a judgment entered in the Superior Court (Cumberland County, *Cole, J.*) affirming the judgment of the District Court (Portland, *Eggert, J.*) ordering his involuntary commitment pursuant to 34–B M.R.S. § 3864 (2009). Christopher H. contends that his due process rights were violated because the court failed to consider whether his sedation resulting from medications involuntarily administered to him the day prior to the hearing prevented him from assisting his counsel or participating in the hearing. We vacate the dismissal of his appeal, but affirm the underlying judgment of involuntary commitment.

## I. BACKGROUND

[¶ 2] Christopher H., a twenty-one-year-old man diagnosed with schizophrenia, was transported to Spring Harbor Hospital in July 2009 and admitted on an emergency application for involuntary admission pursuant to 34–B M.R.S. § 3863 (2009). The application alleged that Christopher H. had threatened to rape a staff member at the group home where he lived, and that he was psychotic and delusional. Three days later, the Department of Health and Human Services submitted an application for Christopher H.'s continued involuntary hospitalization pursuant to 34–B M.R.S. § 3864, alleging that he posed a likelihood of serious harm. Upon receipt of that application, the court assigned counsel for Christopher H. and designated two examiners, as required by 34–B M.R.S. § 3864(4) (2009).

[¶ 3] Over the next ten days at the hospital Christopher H. displayed psychotic symptoms and exhibited paranoid and disordered thoughts, irritability, aggression, grandiosity, and insomnia. Due to concerns that his symptoms were escalating, and because sharp plastic objects were discovered in his room, the hospital initiated a psychiatric emergency and administered three medications to Christopher H. without his consent: Geodon (an atypical antipsychotic used specifically to treat schizophrenia); Haldol (an antipsychotic); and benzodiazepine (a sedative and anxiolytic).[1]

[¶ 4] The day following the involuntary administration of medications to Christopher H., the hearing on the Department's application seeking his involuntary hospitalization pursuant to 34–B M.R.S. § 3864(5) was held. At the hearing, both independent examiners who had evaluated Christopher H. testified that he constituted a threat to himself and others and should be confined to the hospital. Because of the drugs that he had been administered, Christopher H. showed a highly sedated affect at the hearing, and had minimal ability to communicate. A staff member of the hospital testified that Christopher H. was "quite sedated now," and the court acknowledged that Christopher H. did not want to take the drugs, observing that "[i]f they have this impact on him, I ... can't say that I blame him."

[¶ 5] After the hearing, the court found that the statutory requirements for involuntary commitment had been met and ordered that Christopher H. remain in Spring Harbor Hospital for treatment for a period not to exceed 120 days. On appeal, the Superior Court held that because 34–B M.R.S. § 3864 provides adequate safeguards for protecting the interests of

---

1. Spring Harbor had authority to administer these medications over the patient's objection only because a physician declared that, as a result of Christopher H.'s behavior due to his mental illness, there existed a risk of imminent bodily injury to himself or others. 14–193 C.M.R. ch. 1, Part B(V)(H).

subjects of involuntary commitment hearings, the court was not obligated to inquire into Christopher H.'s ability to participate in the hearing. Christopher H. then timely filed this appeal. The commitment order expired while this appeal has been pending.

## II. DISCUSSION

■ [¶ 6] "When ... the Superior Court acts as an intermediate appellate tribunal, we directly review the judgment of the District Court to determine whether that decision contains any error of law that affects the validity of the judgment." *Homstead Enters., v. Johnson Prods., Inc.,* 540 A.2d 471, 472 (Me.1988).

[¶ 7] Christopher H. contends that the court, by failing to consider whether the involuntary medications he had been administered prior to the hearing compromised his ability to protect his rights, denied him due process of the law as guaranteed by section 1 of the Fourteenth Amendment to the United States Constitution and article I, section 6–A of the Maine Constitution. He asserts that when an individual who is the subject of an involuntary commitment hearing has been involuntarily medicated, fundamental fairness requires that the court make an inquiry on the record to determine whether a fair hearing can be conducted or whether the hearing should be postponed.

[¶ 8] The Department responds that Christopher H.'s due process rights were protected by statutory procedural protections, including the appointment of two independent examiners, the right to be present at the hearing, and the right to be represented by counsel. The Department also contends that Christopher H. failed to preserve the issue he raises on appeal because he did not object to the court's failure to conduct any colloquy regarding

the effect that the involuntary administration of medications may have had on his ability to participate in his own defense at the hearing.

[¶ 9] We turn first to two threshold issues, (A) whether this appeal is moot and should be dismissed, and (B) whether we should not reach the merits of the issue raised by Christopher H. because he failed to preserve the issue for appellate review. We then consider (C) what is required when, as in this case, the court is made aware that the individual who is the subject of an involuntary commitment hearing has been involuntarily administered medications prior to the hearing.

### A. Mootness

■ [¶ 10] Because Christopher H. was discharged from Spring Harbor Hospital while this appeal has been pending, the appeal could be construed as moot. Although the parties have not raised the issue of mootness, we consider it sua sponte where applicable. *See In re Walter R.,* 2004 ME 77, ¶ 8, 850 A.2d 346, 349.

■ [¶ 11] Generally, to hear an appeal, we must be able to resolve a justiciable controversy in which the parties have a current interest in the outcome of the litigation. *See In re Faucher,* 558 A.2d 705, 706 (Me.1989); Alexander, *Maine Appellate Practice* § 205 at 188 (3d ed.2008). However, even if an appeal is moot, we will address the merits where: (1) "[s]ufficient collateral consequences will result from the determination of the questions presented so as to justify relief"; (2) there exist "questions of great public concern" that we address in order to provide future guidance; or (3) "the issues are capable of repetition but evade review because of their fleeting or determinate nature." *Lewiston Daily Sun v. School Admin.*

*Dist. No. 43*, 1999 ME 143, ¶ 17, 738 A.2d 1239, 1243.

[¶ 12] In this case, the second and third exceptions to the mootness doctrine apply. The public interest exception to mootness applies where a question of "great public concern" is brought before us. *Young v. Young*, 2002 ME 167, ¶ 9, 810 A.2d 418, 422. In ascertaining whether an issue falls within this exception, "we consider whether the issue is private or public; whether court officials need an authoritative decision for future proceedings; and the likelihood of the issue repeating itself in the future." *In re Walter R.*, 2004 ME 77, ¶ 12, 850 A.2d at 350. Because the current appeal impacts those subject to involuntary commitment hearings, and "because the State's interest in protecting the mentally ill is a public concern," this exception to the mootness doctrine applies. *Id.*

[¶ 13] The repeat presentation exception to mootness applies where "the issue may be repeatedly presented to the trial court, yet escape review at the appellate level because of its fleeting or determinate nature." *In re Marcial O.*, 1999 ME 64, ¶ 10, 728 A.2d 158, 161. Because of the "brief length of . . . commitment," and because it is likely "that the specific issue in the present case will be repeatedly presented," *In re Faucher*, 558 A.2d at 706, this exception to the mootness doctrine also applies.[2]

### B. Unpreserved Error

[¶ 14] The Department contends that we should not reach the merits of this appeal because Christopher H. did not raise an objection to the District Court's failure to expressly address whether his ability to participate at the hearing was impaired by the involuntary administration of medications.

[¶ 15] As a general rule, we will not engage in appellate review of alleged error that is unpreserved. Alexander, *Maine Appellate Practice* § 402 at 214. We will consider unpreserved error, however, where "application of the general rule . . . would obviously result in a plain miscarriage of justice." *Teel v. Colson*, 396 A.2d 529, 534 (Me.1979).

[¶ 16] The unpreserved issue in this case is legally significant. The process that is required when an individual's ability to participate in an involuntary commitment hearing may have been affected by the involuntary administration of psychotropic medications must be tailored to protect the fundamental liberty interest at stake. *See Kansas v. Hendricks*, 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) ("involuntary commitment statutes [are upheld] provided the confinement takes place pursuant to proper procedures and evidentiary standards"). This is also an issue that will escape review at the appellate level because of its fleeting or determinate nature, due to the fact that involuntary commitments are generally of short duration. Because the issue Christo-

---

2. The collateral consequences exception applies "where sufficient collateral consequences result from the appealed matter so as to justify relief." *In re Walter R.*, 2004 ME 77, ¶ 9, 850 A.2d 346, 349. Title 34-B M.R.S. § 3864(A-1) (2009) provides that the collateral consequences of involuntary commitment include both the fact that Christopher H. would face a longer potential term of commitment, up to one year at a subsequent commit-

ment after the first, and that he would be prohibited from possessing a firearm pursuant to 15 M.R.S. § 393(1)(E) (2009) and 18 U.S.C.S. § 922(g)(4) (LexisNexis 2005). *In re Walter R.*, 2004 ME 77, ¶ 10, 850 A.2d at 349. However, because Christopher H. has already been subject to a prior involuntary commitment and suffered those collateral consequences, this exception does not apply in this case.

pher H. raises bears directly on a fundamental liberty interest and is the type of question that will generally escape appellate review, we are satisfied that justice demands that we consider it.

## C. Requirements When An Individual Has Been Subject to Involuntary Administration of Medications

■ [¶ 17] Christopher H. contends that when a trial court conducting an involuntary commitment hearing learns that the individual who is the subject of the hearing has been involuntarily medicated, the court must engage in a colloquy with the individual to determine whether a fair hearing can be conducted and, if it concludes that a fair hearing cannot be conducted that day, the hearing should be postponed. The Department responds that Christopher H.'s due process rights were protected by the statutory procedural protections including the appointment of independent examiners, the right to be present at the hearing, and the right to be represented by court-appointed counsel. *See* 34–B M.R.S. § 3864(4)(A), (5)(B), (5)(C), (5)(D). Both parties acknowledge that no other court has previously addressed the precise constitutional question presented here, although some have addressed some aspect of the issue in dicta.[3]

■ [¶ 18] We find it unnecessary to decide this question based on the constitutional guarantee of due process. "Before we reach directly any constitutional issue,

prudent appellate review requires that we first determine whether the issue may be resolved on a basis that does not implicate the constitution." *Bates v. Dep't of Behavioral & Developmental Servs.*, 2004 ME 154, ¶ 85, 863 A.2d 890, 911–12 (citing *Hannum v. Bd. of Envtl. Prot.*, 2003 ME 123, ¶ 18, 832 A.2d 765, 770; *Rideout v. Riendeau*, 2000 ME 198, ¶ 15, 761 A.2d 291, 298); *see also* Alexander, *Maine Appellate Practice* § 415 at 227–28. As this case demonstrates, effective appellate review is not possible if the court, having been made aware that an individual subject to a commitment hearing may have been rendered less able to participate in the hearing as a result of having been involuntarily medicated, makes no inquiry or mention of the issue on the record or in its judgment.

[¶ 19] We now conclude that in the interests of fairness and to ensure effective appellate review, trial courts should address this issue on the record or in the resulting judgment. This does not mean that the trial court must engage in an extended colloquy on the issue as suggested by Christopher H. It will suffice if the record reflects that the court asked the individual, his or her attorney, or an expert medical witness to discuss whether and to what extent the effects of the medications involuntarily administered to the individual interfere with the individual's ability to be present and participate in the hearing. If the court determines that the medications leave the person no less capa-

---

3. *See Doremus v. Farrell,* 407 F.Supp. 509, 515 (D.Neb.1975) ("[F]ail[ure] to ensure the subject the right to be free from the involuntary drugs or other treatment which might dilute or destroy his ability to assist in the presentation of his defense" constitutes denial of due process); *Lynch v. Baxley,* 386 F.Supp. 378, 389 (M.D.Ala.1974), *vacated on other grounds, Lynch v. Sessions,* 942 F.Supp. 1419 (M.D. Ala.1996) ("Due process is not accorded by a hearing in which the individual,

though physically present, has no meaningful opportunity to participate because of incapacity caused by excessive or inappropriate medication"); *Lessard v. Schmidt,* 349 F.Supp. 1078, 1092 (E.D.Wis.1972), *vacated on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) ("[D]ue process is not accorded ... [where] the individual has no meaningful opportunity to be heard ... because of incapacity caused by medication....").

ble of being present and participating in the hearing than he or she would have been without having received the medications, there is no reason to postpone the hearing.[4] If the court concludes that a continuance is required, it must account for the mandatory time requirements for conducting the hearing set forth in 34–B M.R.S. § 3864(5)(A) (2009).[5]

[¶ 20] Because each case is different, we leave it to the sound discretion of the trial court to determine the extent and nature of the inquiry to be made in a particular case. At a minimum, however, the record should establish that the question was considered by the court.

[¶ 21] In this case, the court was made aware that Christopher H. had been involuntarily administered medications prior to the hearing, and the court's comments on the record indicate the medications had rendered Christopher H. visibly sedated. The court did not expressly consider, however, whether Christopher H.'s sedated condition left him less capable of participating in the hearing than if he had not been sedated. Because we have not, prior to today, required that this issue be addressed on the hearing record or in the court's judgment, and Christopher H. is no longer subject to the commitment ordered by the court, there is no reason to upset the underlying judgment.

[¶ 22] Although not raised by Christopher H., we also note that the judgment entered by the court did not state that it applied the clear and convincing evidence standard in determining that Christopher H. could be subjected to involuntary commitment. Title 34–B M.R.S. § 3864(6)(A) requires a statement on the record of "[c]lear and convincing evidence that the person is mentally ill and that the person's recent actions and behavior demonstrate that the person's illness poses a likelihood of serious harm." We hold that in the future, courts must explicitly state that the clear and convincing evidence standard was applied in involuntary commitment cases; we will not infer that the standard was applied where it is not expressed in the court's judgment. *Cf. In re Amanda H.*, 2007 ME 43, ¶ 3, 917 A.2d 1120, 1120–21 (holding that "[a] court may not enter an order terminating parental rights in the absence of an explicitly stated finding, by clear and convincing evidence, that termination is in the best interest of the child. . . . This finding cannot be inferred from the court's decision . . . ." (quotation marks omitted)).

4. Indeed, in some instances the individual will be better able to be present and participate, because of the medication.

5. **5. Hearing.** Hearings under this section are governed as follows.
   A. The District Court shall hold a hearing on the application not later than 14 days from the date of the application. The District Court may separate the hearing on commitment from the hearing on involuntary treatment.
   (1) For good cause shown, on a motion by any party or by the court on its own motion, the hearing on commitment or on involuntary treatment may be continued for a period not to exceed 21 additional days.

. . . .

(2) If the hearing on commitment is not held within the time specified, or within the specified continuance period, the court shall dismiss the application and order the person discharged forthwith.
(2–A) If the hearing on involuntary treatment is not held within the time specified, or within the specified continuance period, the court shall dismiss the application for involuntary treatment.
(3) In computing the time periods set forth in this paragraph, Maine Rules of Civil Procedure apply.

34–B M.R.S. § 3864(5).