MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2013 ME 49
Docket:      Ken-12-478
Argued:      April 9, 2013
Decided:     May 23, 2013

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and GORMAN, JJ.


IN RE T.B.


ALEXANDER, J.

[¶1]  The father appeals from a judgment entered in the District Court (Waterville, *Dow, J.*) terminating his parental rights to three-year-old T.B.  *See* 22 M.R.S. § 4055(1)(B)(2) (2012).  The father's sole argument on appeal is that, prior to trial, he was denied due process when the court did not, on its own initiative, inform him that he could proceed without counsel after denying the father's motion to dismiss his current counsel and his implicit motion to appoint new counsel to represent him at trial.  We affirm the judgment.

## I.  CASE HISTORY

[¶2]  The father, now forty-four years old, has a long history of substance abuse, mental health issues, criminal activity, and incarceration.  In addition to numerous convictions for various other offenses, the father was convicted of assault in 2009.  During his probationary period for the 2009 conviction, the father tested positive for drug use in violation of a condition of probation and, upon signing an extensive bail contract, was admitted to the co-occurring disorders court

(CODC) in October 2009. The father's obligations with respect to participation in CODC included random drug testing.

[¶3] T.B. was born in May 2010. Two days after T.B.'s birth, the Department of Health and Human Services filed a request for and was granted a preliminary protection order as to T.B.'s mother. The mother thereafter consented to the termination of her parental rights.

[¶4] The father was confirmed to be T.B.'s biological father in February 2011. He requested and was given appointed counsel that month. His counsel moved to withdraw one month later, citing deterioration of the attorney-client relationship. The court granted the motion and appointed new counsel to represent the father.

[¶5] The father met T.B., who was then ten months old, for the first time in March 2011. In May 2011, the father stipulated to the entry of a jeopardy order and entered into a reunification plan in which he agreed to random drug testing and continuing attendance in CODC. Reunification services were interrupted in June 2011 when the father was incarcerated for a probation violation after he tested positive for marijuana and benzodiazepines.

[¶6] After the father's release from jail, reunification services resumed, and the Department placed T.B. with the father in October 2011. That placement was initially successful. However, in December 2011 and in January 2012, the father

tested positive three times for marijuana use in violation of conditions of probation. He was incarcerated for two weeks. The Department removed T.B., then almost twenty-one months old, from the father's care in January 2012.

[¶7]  After the father was released from jail in February 2012, the Department developed a new reunification plan for the father, but the father again tested positive for marijuana use that same month. He was incarcerated for a third time during the reunification period with T.B., this time for a period of four months. The Department then filed a petition to terminate the father's parental rights. A hearing on that petition was scheduled for June 21, 2012.

[¶8]  Approximately one week before the hearing was scheduled to begin, the father personally moved for substitution of court-appointed counsel, specifically identifying two other attorneys that he wanted to represent him. On June 19, 2012, the court held a hearing on the father's motion for substitution of counsel and on his attorney's oral motion to withdraw at the father's request. The court denied the motions on the grounds that trial was to start in two days and that the father's attorney had adequately prepared for trial. At the time, the child had been in State custody for over two years.

[¶9]  Because the court needed to address certain pretrial motions, the trial on the petition to terminate parental rights was continued to July 12, 2012. The

4

father did not renew his motion for substitution of counsel during this three-week continuance.

[¶10]    Before opening statements on the morning of trial, the father's attorney again moved to withdraw, stating that the father wished to proceed in a manner that she believed was not legally proper.  The court denied the motion, noting that it was the morning of a difficult-to-schedule trial, that the attorney was the father's second court-appointed attorney, and that the court had "no concerns about the way [the attorney has] represented [the father's] interests."  The father then spoke, stating that he wanted his present counsel to be allowed to withdraw because there had been an ongoing lack of communication, his attorney had told him that if he testified the way he intended he would perjure himself, and his attorney had failed to locate all of the witnesses that he wanted to testify.  The court provided the father multiple opportunities to articulate fully his reasons in support of his motion.

[¶11]  In a lengthy colloquy, the father made clear that his primary concern was that, having just been released from jail, he wanted more time to prepare for trial and that several witnesses he wanted to testify had not been contacted and, in any event, his "number one witness" would not be available to testify that day. Thus, the father indicated that what he sought was both the withdrawal of counsel and a continuance of the proceedings.  The court again denied the father's motion,

and the father preserved his continuing objection to the denial. Despite having ample opportunity, the father never indicated any interest in representing himself at the hearing.

[¶12] At the close of the two-day trial, the court stated on the record that it found the father to be unfit and that termination of his parental rights was in the child's best interests, after which the court issued a full written decision. After the hearing, the father explicitly requested appointment of new counsel for purposes of appeal, again identifying two alternative attorneys by name. The court granted the father's request, and the father brings this appeal through his third court-appointed counsel.

## II. LEGAL ANALYSIS

[¶13] At oral argument, the father's attorney clarified that the only issue on appeal is whether the father's due process rights under the United States and Maine Constitutions were violated because, "under the circumstances of this case, the trial court needed to complete the process of figuring out who was going to speak for the father," asserting that the court failed to allow the father an opportunity to articulate fully what he wanted to have happen when he moved for dismissal of his appointed counsel.[1] It is from this point that we begin our analysis.

---

[1] Specifically, when asked whether his argument is that "fundamental fairness requires that the judge say to a party affirmatively, 'and you have the right to represent yourself,'" the father's attorney replied that he was "trying to be a little more cautious than that. I'm saying that fundamental fairness suggests that the trial court should be comfortable that the person presenting the case is someone that the father

6

[¶14]   A parent determined to be indigent has a due process right to appointed counsel at State expense in a child protection proceeding initiated by the State, unless the right is knowingly waived. *Hatch v. Anderson*, 2010 ME 94, ¶ 7, 4 A.3d 904; *Danforth v. State Dep't of Health & Welfare*, 303 A.2d 794, 795, 800-01 (Me. 1973); *cf. Lassiter v. Dep't of Social Servs. of Durham Cty., N.C.*, 452 U.S. 18, 24-27, 30-34 (1981) (declining to recognize a per se due process right under the Fourteenth Amendment to court-appointed representation for indigent persons in state-initiated termination of parental rights proceedings).  This right to counsel is codified by state statute specifying that indigent parents involved in child protection proceedings initiated by the State are entitled in most types of such proceedings to court-appointed legal counsel, paid for by the State, and that counsel must be appointed to them upon their request.   22 M.R.S. § 4005(2) (2012); *see In re Christopher C.*, 499 A.2d 163, 164 (Me. 1985).

[¶15]   The father here repeatedly invoked his right to court-appointed counsel, and for good reason.   There is significant benefit derived from representation by counsel and disadvantages that arise from a party's proceeding without counsel in child protective matters. *See In re Christopher C.*, 499 A.2d at 164-65; *Danforth*, 303 A.2d at 799.

---

wants to present his case" and the father never had an opportunity to say to the court how he wanted to proceed at trial because the court "simply cut the whole inquiry off."

[¶16] We have emphasized, however, that child protective proceedings are somewhat unique in that the rights of the parent litigants are not the only interests at stake. "The core purpose of that process is to protect children." *In re D.P.*, 2013 ME 40, ¶ 13, --- A.3d --- (citing 22 M.R.S. § 4003 (2012) ("[T]he health and safety of children must be of paramount concern and . . . the right to family integrity is limited by the right of children to be protected from abuse and neglect")); *see In re Richard G.*, 2001 ME 78, ¶¶ 11-12, 770 A.2d 625 (recognizing the State's interest in the well-being of children). A child protective proceeding may even implicate the interests of other children not addressed in the particular proceeding. *See In re D.P.*, 2013 ME 40, ¶ 14, --- A.3d ---.

[¶17] A court must determine the best interest of the child, which interest may be best served by proper representation of a parent to ensure that all issues and interests in a child protective proceeding are fully and fairly litigated. *See Lassiter*, 452 U.S. at 27-28 (stating that the State has an "urgent interest" in the child's welfare in a child protective proceeding and shares "the parent's interest in an accurate and just decision," and that those interests may be best served when both the State and the parent are represented by counsel).

[¶18] Here, the father repeatedly invoked his right to appointed counsel. He requested counsel at the initial stages of these proceedings when it was determined that he was the biological father of T.B. When his first appointed counsel moved

to withdraw on grounds that the father lacked faith in his counsel and the attorney-client relationship had deteriorated, the father was again given and accepted court-appointed counsel. This second attorney represented the father continuously for more than fifteen months without any indication that the father was dissatisfied by that representation. The father did not move to dismiss his second appointed counsel until one week before the trial on the petition for termination of his parental rights was scheduled to begin.

[¶19] At that time, the father unambiguously sought new court-appointed counsel, as evidenced by his naming possible replacement attorneys. After the court denied that motion, the father remained silent for three weeks, until moving again for dismissal or substitution of counsel at the start of trial. At that time, contrary to the father's claim on appeal, the court provided the father with an extensive opportunity to present his arguments in support of his motion. In his argument, the father did not suggest in any way that he wanted to proceed unrepresented. To the contrary, the record before us indicates only that the father consistently sought to be represented by counsel from the initiation of the proceedings through to the appeal now before us.

[¶20] Given the facts of the case, we do not reach the father's contention that the court violated his due process rights by neglecting to determine, sua sponte, whether the father wanted to proceed unrepresented. *See In re*

*Christopher H.*, 2011 ME 13, ¶ 18, 12 A.3d 64 ("Before we reach directly any constitutional issue, prudent appellate review requires that we first determine whether the issue may be resolved on a basis that does not implicate the constitution.").[2] The father made apparent to the trial court at every step of the proceeding that he wanted appointed counsel and had no intention to waive that right.

[¶21] We thus confine our review to the determination of whether the court abused its discretion in denying the father's motion to dismiss or substitute his counsel on the day of trial and his implicit motion to continue. *See In re Trever I.*, 2009 ME 59, ¶ 28, 973 A.2d 752; *Bradshaw v. Bradshaw*, 2005 ME 14, ¶ 10, 866 A.2d 839; *see also State v. Dunbar*, 2008 ME 182, ¶ 5, 960 A.2d 1173.

[¶22] On the record before us, the court did not abuse its discretion in denying the father's motion to substitute or dismiss counsel or his implicit motion for a continuance. *See In re Trever I.*, 2009 ME 59, ¶ 28, 973 A.2d 752;

---

[2] In *In re Christopher H.*, the appellant argued that the court violated his due process rights when the court failed to determine on the record at his hearing for involuntary commitment whether the appellant was able to meaningfully participate in his hearing after having been involuntarily administered medication the previous day, or whether the hearing should be postponed. 2011 ME 13, ¶¶ 1, 17, 12 A.3d 64. We held that it was unnecessary to reach that constitutional issue because, despite the fact that the court was informed that the appellant had been medicated prior to the hearing, the court failed to engage the party in a colloquy to determine his ability to participate in the hearing, which resulted in an inadequate record for appellate review. *Id.* ¶¶ 18-19.

The father in this case argues in part that the court in the termination of parental rights hearing failed to engage the father in a colloquy to ascertain "who was going to speak for the father," but unlike the court in *In re Christopher H.*, the trial court in this case had no reason to engage in such a colloquy when the father had made clear throughout the child protective proceedings that he wanted court-appointed counsel.

*Bradshaw*, 2005 ME 14, ¶ 10, 866 A.2d 839;[3] *see also State v. Brown*, 2000 ME 25, ¶¶ 17-20 & n.9, 757 A.2d 768 (stating in the context of a criminal matter that "[a] court need not tolerate unwarranted delays, and, if in the sound discretion of the court the attempted exercise of choice is deemed dilatory or otherwise subversive of the orderly . . . process, the court may compel a defendant to go to trial even if he is not entirely satisfied with his designated attorney").

The entry is:

Judgment affirmed.

---

**On the briefs:**

Jack Hunt, Esq., Kennebunk, for appellant father

Janet T. Mills, Attorney General, and Nora Sosnoff, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

**At oral argument:**

Jack Hunt, Esq., for appellant father

Nora Sosnoff, Asst. Atty. Gen., for appellee Department of Health and Human Services

---

[3] The father has not argued that the court's decision to not continue the trial violated his due process rights, and we do not address that issue. *See Holland v. Sebunya*, 2000 ME 160, ¶ 9 n.6, 759 A.2d 205; *see also In re A.M.*, 2012 ME 118, ¶ 14, 55 A.3d 463.