MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 110
Docket:        Cum-18-26
Submitted
  On Briefs:   July 24, 2018
Decided:       August 2, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

IN RE CHILDREN OF MELISSA F.

PER CURIAM

[¶1]  Melissa F. and Taurus W. Sr. appeal from a judgment of the District Court (Portland, *Powers, J.*) terminating their parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i)-(ii), (iv) (2017).  The mother and father challenge the sufficiency of the evidence supporting the court's findings that they are parentally unfit and that termination of parental rights is in the best interests of the children.  The mother further contends that the court (1) was barred by res judicata from taking evidence at the second termination hearing on issues litigated at the first termination hearing; (2) abused its discretion by denying her motion to proceed without counsel; and (3) demonstrated bias against her and did not render a fair judgment.  We conclude that there is competent evidence in the record supporting the court's findings regarding the bases for the parents' unfitness and its discretionary determination that termination of parental rights is in the best interests of the

children.  The mother's other contentions are unpersuasive.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  Following a four-day termination hearing that concluded on December 14, 2017, the court issued a judgment dated January 10, 2018, in which it found by clear and convincing evidence that the parents are unable or unwilling to protect the children from jeopardy or take responsibility for them in a reasonable time, they have failed to make a good faith effort at rehabilitating themselves and reunifying with the children, and that the termination of parental rights is in the children's best interests.  *See* 22 M.R.S. § 4055(1)(A)(1)(a), (B)(2)(a), (b)(i)-(ii), (iv).  The court took judicial notice of its prior orders, evidence presented in hearings that occurred between July and December of 2017, and the reports of the guardian ad litem (GAL).  *See In re  Caleb M.*, 2017 ME 66, ¶ 23, 159 A.3d 345.  The court made the following findings:

> [The parents] have clearly not tried to reunify in good faith. [The father] has sporadically visited his children.  He has rarely attended any family team meetings and court conferences/hearings.  [The father] has largely deferred to [the mother] to deal with this case.  [The mother] has long made personal, cruel, and unhelpful comments to [a] caseworker . . . , which harmed their relationship, has refused to divulge the family's whereabouts for several months in late 2017, has failed to attend

the properly noticed September 11, 2017 team meeting, and then attended the November 30, 2017 meeting only if the GAL left. She has also lied to DHHS about rental payments made, and the children's whereabouts for hours during the August 28, 2017 park visit, which led to suspended visits. She failed to attend numerous court-ordered drug testing sessions, and she did not attend mental health counseling until October 11, 2017, going only three times. [The mother] has done well with supervised visits themselves in large part. Neither parent has signed the three reunification plans and neither has met the goals or remedied jeopardy. [The mother] has chosen to impede proper reunification efforts due to her distrust of DHHS and the GAL. The parents have largely failed to comply with the court's orders of July 19, 2017 and October 12, 2017.

[The parents] have likewise been unable for about 32 months to take responsibility for the children's needs in any reasonable time that meets their needs and have not been able to protect their children from jeopardy in a reasonable time which meets their needs. There is no likelihood that this situation will change in the near future as demonstrated by their performance over the last 32 months. Deprivation of proper shelter for children aged 7 to 6th grade is included in the definition of jeopardy in 22 M.R.S. §[ ]4002(6).

Despite having the ability to work and earn income, the parents have regularly amassed significant rental arrearages and have been evicted three times. They have claimed twice to be obtaining new housing in Casco, and twice since the summer of 2017 have failed to do so. They have a history of two failed trial placements and unsuitable living situations that include several motels and recently a friend's home in Westbrook. Chaos at home has been prevalent and progress has not. There is no current prospect for another home placement with visits still supervised and housing uncertain. Providing suitable and stable housing is a primary parental function necessary to allow children to grow and flourish. [The mother], and [the father] by deference to her, have chosen to blame others and failed to recognize and resolve their

4

parenting deficits since the court's July 2017 order on the first termination petition. That order gave them more time to reunify, which has not happened for good reasons outlined above. These parents could have focused their energies on solving housing instability and other parenting deficits, which they have not done.

<u>BEST INTEREST</u>

As to the second issue of "best interest[s]" of the children, the court also finds DHHS has proven by clear and convincing evidence that termination of both parents' rights to the three children is in their best interest[s]. The facts found [above] also support this conclusion, including the best interest[s] of the children since the July 19, 2017 order.

These three children have been in their current placement since October 2016. The GAL and DHHS are favorably impressed with the resource family and its care of all three, needy children. Each has progressed in the placement, having fewer needs for therapy and succeeding in school. They have a good relationship with the resource parent and the three other children there. These parents have long experience in running a preschool and dealing with children's issues.

The biological parents have not made real progress in remedying their parental deficits in 32 months, which is an exceptionally long time. There is no expectation for this to change in the near future, at the very least. The children's uncertainty about their parents and their future living arrangement remains and will remain unless termination occurs. They seem aware of the court process that has been proceeding since April 2015, which itself produces uncertainty. The current placement provides a stable, caring, and predictable environment for these young children, which the parents have not done and cannot do. They will also be able to live together should termination occur.

## II. DISCUSSION

[¶3]  We address the parents' arguments in turn, beginning with the mother's contention that the court was barred by the doctrine of res judicata from taking certain evidence at the December 2017 termination proceeding.

## A.  Res Judicata

[¶4]  The mother first argues that a portion of the "testimony and evidence presented at the second termination of parental rights trial [was] barred by res judicata."  Because this argument was not raised during the termination proceeding, we review for obvious error whether the July 2017 order—which denied the Department's first petition—had any preclusive effect upon the issues before the court in December of 2017.  *See In re Joshua B.*, 2001 ME 115, ¶¶ 9-11, 776 A.2d 1240; *In re Robin T.*, 651 A.2d 337, 338 (Me. 1994).

[¶5]  The doctrine of res judicata encompasses two concepts: claim preclusion and issue preclusion.  Neither is applicable here.

[¶6] Issue preclusion is patently not applicable here because it "prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment."  *Guardianship of Jewel M.*, 2010 ME 80, ¶ 39, 2 A.3d 301 (quotation marks omitted).  The parties did not attempt at the

December hearing to relitigate factual issues that had been litigated at the July hearing—the court simply and properly took judicial notice of that evidence. *See In re Caleb M.*, 2017 ME 66, ¶ 23, 159 A.3d 345. At the December hearing, both the court and the parties focused upon the events that had occurred since July of 2017. Any reference to facts litigated at the July hearing were offered only to put the subsequent events in context. *See id*. Accordingly, issue preclusion is not implicated by the circumstances of this matter.

[¶7] Claim preclusion bars the relitigation of claims if "(1) the same parties or their privies are involved in both actions; (2) a valid final judgment was entered in the prior action; and (3) the matters presented for decision in the second action were, or might have been, litigated in the first action." *Guardianship of Jewel M.*, 2010 ME 80, ¶ 40, 2 A.3d 301. We have warned, "[p]rinciples of res judicata must be applied with caution in domestic relations cases, as new developments often inform decisions as to what may be in the best interest of a child. . . ." *Id.* ¶ 41.

[¶8] The court's July 2017 order denying the first petition to terminate parental rights clearly states, "this [order] does not prevent . . . a later termination request should circumstances so dictate." Moreover, the Department did not, and could not possibly, litigate issues during the July 2017

hearing that were based on events yet to occur. The time period between July and December of 2017 framed the court's repeated directives that the parties focus their presentations of evidence on that period of time. As we have noted previously, the similarity between the type of events occurring in previous child protective actions does not make the parents "immune from subsequent [child protective] proceedings merely because [the current allegations] are similar in nature to the allegations [the Department] made against the [parents] in the prior dismissed petition." *In re Kaleb D.*, 2001 ME 55, ¶¶ 11-12, 769 A.2d 179. Accordingly, the fact that an earlier petition for termination of parental rights was denied by the court does not bar a later petition even though both may be predicated, in large part, upon the parents' ongoing failure to obtain secure and stable housing for the children.

B.     Grounds for Termination and Best Interests of the Children

[¶9]  We review for clear error the court's findings in support of the bases for the parents' unfitness and the best interests of the children, and for an abuse of discretion the ultimate determination that termination is in the children's best interests. *See In re Child of James R.*, 2018 ME 50, ¶¶ 11, 14, 182 A.3d 1252. "[I]n order to terminate parental rights[,] the court must find, by clear and convincing evidence, at least one of the four statutory grounds of parental

unfitness." *Id.* ¶ 11 (citing 22 M.R.S. § 4055(1)(B) (2017)). We will vacate a finding of unfitness "only if there is no competent evidence in the record to support it, if the fact-finder clearly misapprehends the meaning of the evidence, or if the finding is so contrary to the credible evidence that it does not represent the truth and right of the case." *Id.* (quotation marks omitted); *In re Cameron B.*, 2017 ME 18, ¶ 10, 154 A.3d 1199. Further, as the court properly recited, *see supra* ¶ 2, the statutory definitions of "jeopardy to health or welfare" include the "deprivation of adequate . . . shelter," given the ages of the children. 22 M.R.S. § 4002(6)(B) (2017).

[¶10] The parents contend that the court's findings regarding parental unfitness and the best interests of the children are unsupported by sufficient competent evidence in the record. The parents assert that the court failed to properly consider the alleged impact that the Department's efforts to promote family reunification had on the parents' ability to secure and maintain adequate housing. The mother further argues that the only competent evidence received by the court at the December 2017 termination proceeding, which concerns "[t]he limited events that occurred following the [July termination hearing,] do[es] not rise to the level of clear and convincing evidence to justify a termination of parental rights." We disagree.

[¶11] Contrary to the parents' contentions, competent evidence in the record supports, to the clear and convincing standard, the court's findings concerning each of the bases of parental unfitness and the children's best interests. *See In re Child of James R.*, 2018 ME 50, ¶¶ 11, 22-23, 182 A.3d 1252. The effort by the Department towards family reunification "is not by itself a basis for the court to deny a termination petition, although it is a factor," *Id.* ¶ 21—one that the court explicitly considered here. And, in any event, the failure of reunification efforts occurred as a result of the parents' opposition to the Department's efforts and an abject refusal to engage with services that would facilitate reunification.

[¶12] The court's July 2017 order gave the parents an additional period of time to secure adequate housing, but they focused their efforts during that time on "imped[ing] proper reunification efforts due to [the mother's] distrust of DHHS and the GAL." The mother "asserted at trial [in December of 2017] that she and [the father] . . . located another place to live." However, despite the court keeping the evidentiary record open for four days following the hearing, the parents failed to provide a copy of the lease or to even advise the court or the Department of the address at the new residence. The evidence supports, therefore, the court's findings that "it is highly likely that these parents did not

obtain that new housing," and that as a result they remain unwilling or unable to protect the children from jeopardy or take responsibility for them in a reasonable time, and have failed to make a good faith effort to rehabilitate and reunify with the children. *See* 22 M.R.S. § 4055(1)(B)(2), (b)(i)-(ii), (iv).

[¶13]  As for the best interests of the children, the clear preference of the Legislature, as evinced by 22 M.R.S. § 4050 (2017), is to "[e]liminate the need for children to wait unreasonable periods of time for their parents to correct the conditions which prevent their return to the family" and to "[p]romote the adoption of children into stable families."  The children have been in foster care since October of 2016 after experiencing a longer period of impermanence due to the parents' lack of housing.  The current foster placement is in a loving, stable, and child-centered home where the children have progressed with therapy and services.  Because these children need the permanence that adoption can afford them, the court did not abuse its discretion by deeming that termination of parental rights was in the children's best interests. *See In re Child of James R.*, 2018 ME 50, ¶¶ 11, 14, 22-23, 182 A.3d 1252; *In re Child of Heather W.*, 2018 ME 31, ¶ 11, 180 A.3d 661.

C.      Mother's Self-Representation

[¶14]  The mother next argues that the court erred when it declined to allow her attorney to withdraw, at the mother's request, and instead ordered her attorney to be standby counsel while the mother represented herself at the December 2017 termination proceeding.  We review the denial of a party's motion to dismiss counsel for an abuse of discretion.  *In re T.B.*, 2013 ME 49, ¶¶ 13-21, 65 A.3d 1282.  Although we have held that criminal defendants possess a constitutional right to pursue self-representation,[1] *State v. Hofland*, 2012 ME 129, ¶ 14, 58 A.3d 1023, there is no equivalent right held by a civil defendant such as the mother in this case.  *See In re Penelope W.*, 2011 ME 58, ¶ 9, 19 A.3d 813.  Accordingly, the court did not abuse its discretion by denying the mother's motion to proceed without counsel.  *See In re T.B.*, 2013 ME 49, ¶¶ 13-22, 65 A.3d 1282.

D.      Judicial Bias

[¶15]  The mother's final argument is that the court's conduct at the second termination hearing demonstrated such bias against her that it

---

[1] Even when a criminal defendant's right to self-representation is implicated, we have affirmed that the use of standby counsel does not violate that right when two conditions are satisfied. *See State v. Hofland*, 2012 ME 129, ¶¶ 15-16, 58 A.3d 1023. "First, the pro se defendant is entitled to preserve actual control over the case he chooses to present . . . . Second, participation by standby counsel without the defendant's consent [does] not . . . destroy the . . . perception that the defendant is representing himself." *Id.* ¶ 15 (quotation marks omitted). Here, the court structured the mother's self-representation in a manner that more than satisfied those conditions.

deprived her of a fair trial. "When a litigant asserts that a judge's comments indicate bias and a denial of due process, if the litigant does not move for a recusal of the judge, we review the contentions for obvious error." *Rinehart v. Schubel*, 2002 ME 53, ¶ 13, 794 A.2d 73 (quotation marks omitted). Only when such statements appear in extraordinary circumstances that demonstrate "deep-seated favoritism or antagonism that would make fair judgment impossible," have we detected even the risk of substantial injustice. *Liteky v. United States*, 510 U.S. 540, 555 (1994)); *In re William S.*, 2000 ME 34, ¶ 9, 745 A.2d 991. We have also held that "a pro se litigant is not entitled to preferential treatment or to judicial accommodation greater than that afforded to a litigant appearing by legal counsel." *Rinehart*, 2002 ME 53, ¶ 13, 794 A.2d 73 (quotation marks omitted).

[¶16]  Here, the court declined to allow the mother to represent herself without standby counsel because she "has been outspoken in court and often has talked loudly and out of turn, causing the court some concern about her ability to participate appropriately in a termination hearing." At the termination hearing, consistent with the court's earlier concerns, the mother made repeated and inappropriate commentary when examining witnesses. In response, the court, "literally dozens of times[,] found it necessary to intervene

during testimony to keep order and allow evidence to be presented" over the four-day proceeding and, ultimately, to temporarily remove the mother from the courtroom on the fourth day of the hearing.[2]  Judge Powers's efforts to maintain order during the trial in the face of repeated interruptions, insults, and otherwise obstructionist behaviors by the mother constitute an exemplary and commendable demonstration of patience and restraint as well as an appropriate exercise of authority as provided by Rule 611(a) of the Maine Rules of Evidence.

The entry is:

Judgment affirmed.

---

Pamela S. Holmes, Esq., and Brittany Sawyer, Esq., Holmes Legal Group, LLC, Wells, for appellant mother

Rubin Guedalie Segal, Esq., Portland, for appellant father

Janet T. Mills, Attorney General, and Hunter C. Umphrey, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2015-57
FOR CLERK REFERENCE ONLY

---

[2] Judge Powers's management of the mother's behaviors during the trial did not in any way curtail her opportunity to report or explain any efforts by the parents to maintain safe, secure, and suitable housing.  On the contrary, the court provided the parents every possible opportunity to obtain such housing—and to provide evidence that they had obtained such housing—but no meaningful progress toward that end was accomplished during the entire pendency of this matter.